**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NICK MANGIARACINA,
*Plaintiff-Appellant*,

v.

PAUL PENZONE; CRAIG GARCIA,
named as: Sgt. Garcia #A7747;
UNKNOWN HANSEN, Officer of the
MCSO; EDDIE DE LA ROSA, Sgt./
A7779; ANTHONY MANK, Sgt./
A4767; JOHN BEDDOME, Sgt./
A4986; JESSE NYLAND, Inmate
Classification/ A7875; DEAN
WAGNER, Inmate Classification/
A5441; UNKNOWN HARMON, named
as Captain Harmon; UNKNOWN
GARCIA, named as Lt. Garcia
#A4226; BILL WILLIAMS, External
Reffern; UNKNOWN WADE, named
as BHO Sgt. Wade; UNKNOWN
PARTIES, named as John/Jane Does
1–10 Mesa Police Department and
John/Jane Does 1–100 County of
Maricopa; UNKNOWN PARTY, named
as MCSO BHO on Grevince #12-
03278; MARICOPA COUNTY, County
of Maricopa John/Jane 1–100
Defendant; UNKNOWN PARTIES,
John Doe #1, John Does #3–14;

No. 14-15271

D.C. No.
2:13-cv-00709-
NVW-SPL

OPINION

UNKNOWN CAPANARO, Captain at
4th Avenue Jail in April 2012;
MCSO SMURC BOARD, John and
Jane Does 15–20,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted June 6, 2016
Seattle, Washington

Filed March 3, 2017

Before: Richard A. Paez and Jay S. Bybee, Circuit Judges
and Jon S. Tigar,[*] District Judge.

Opinion by Judge Paez;
Concurrence by Judge Bybee

---

[*] The Honorable Jon S. Tigar, District Judge for the U.S. District
Court for the Northern District of California, sitting by designation.

# SUMMARY[**]

## Prisoner Civil Rights

The panel affirmed in part and reversed in part the district court's dismissal of a complaint pursuant to 28 U.S.C. § 1915A, and remanded in an action brought pursuant to 42 U.S.C. § 1983 by a prisoner who alleged First and Sixth Amendment claims arising from jail employees opening his legal mail outside his presence while he was a pretrial detainee.

The panel reversed the district court's dismissal as to illegal mail openings on two separate occasions. The panel held that under *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014), prisoners have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected. For the remaining counts, the panel held that the district court correctly determined that plaintiff failed to allege that the mail opened was properly marked as legal mail.

The panel reversed the dismissal of plaintiff's First Amendment claim, and remanded to the district court for consideration, if necessary, of this claim in light of *Hayes v. Idaho Correctional Center*, No. 14-35078 (9th Cir. March 3, 2017), filed concurrently with this opinion.

Concurring in the judgment, Judge Bybee agreed with the conclusion that prisoners have a general Sixth Amendment

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

right to be present when legal mail related to a criminal matter is inspected.  He wrote separately to clarify that merely negligent conduct on the part of prison officials is not sufficient to state a claim.

**COUNSEL**

Harry Williams IV (argued), Law Office of Harry Williams, Seattle, Washington, for Plaintiff-Appellant.

James Kenneth Mangum (argued), Deputy County Attorney; William G. Montgomery, County Attorney; Civil Services Division, Maricopa County Attorney's Office, Phoenix, Arizona; for Defendants-Appellees.

Corene Kendrick and Donald Specter, Prison Law Office, Berkeley, California; David M. Porter, Co-Chair, NADCL Amicus Committee, National Association of Criminal Defense Lawyers, Sacramento, California; for Amici Curiae National Association of Criminal Defense Lawyers, Arizona Attorneys for Criminal Justice, Prison Law Office, American Civil Liberties Union, and ACLU of Arizona.

**OPINION**

PAEZ, Circuit Judge:

Nick Mangiaracina appeals the dismissal of his First and Sixth Amendment claims arising from jail employees opening legal mail outside his presence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

**I.**

At the time of the events described in the operative complaint (the third amended complaint), Nick Mangiaracina was incarcerated as a pre-trial detainee in Maricopa County's Fourth Avenue Jail in Phoenix, Arizona. The jail's stated policy is to open legal mail addressed to a prisoner only in the presence of that prisoner. *See* Maricopa County Jails, *Rules and Regulations for Inmates* § 17, at 24.[1] Mangiaracina alleged, however, that his mail was repeatedly opened

---

[1] We take judicial notice of the Maricopa County Jails Rules and Regulations for Inmates, as the document is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see United States v. Thornton*, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of a federal Bureau of Prisons policy statement). Relevant portions of the regulations are contained in Appendix 1 to the Replacement Opening Brief and Exhibit 1 to the Brief of Amici Curiae National Association of Criminal Defense Lawyers, Arizona Attorneys for Criminal Justice, Prison Law Office, American Civil Liberties Union, and ACLU of Arizona.

"outside [his] presence" in contravention of this policy.[2] The complaint included descriptions of nine specific instances of alleged improper mail opening.

Mangiaracina alleged that in September 2011, he received a letter from his attorney that had been "opened and taped shut." He further alleged that on March 23, 2012, he "mailed a [manila] envelope that was sealed to [his] attorney. . . ." While an officer was sorting mail later that evening, Mangiaracina saw that his letter had been opened. Mangiaracina was then "allowed to reseal it and it was mailed."

On November 9, 2012, a jail employee opened an incoming letter from Mangiaracina's attorney. Mangiaracina attached the mail room's response to his grievance regarding the incident, which stated: "The mailroom documents any legal mail that come[s] in torn-open or damaged. According to our records you[r] legal mail was delivered to the 4th Ave. Jail sealed and un-opened." A second response from the jail stated that during mail distribution, "it was noted that inmate Mangiaracina's legal mail envelope had been cut open and stapled closed prior to it being delivered to [the Fourth Avenue Jail]. . . . [T]he reason [it was open] was unknown" to the employee responding to the grievance, "as it had been delivered to [the Fourth Avenue Jail] that way for distribution."

---

[2] In reviewing an order dismissing a complaint for failure to state a claim, we accept all allegations of material facts as true, and we construe the facts in the light most favorable to the plaintiff. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Mangiaracina also described several incidents of improper mail opening in January 2013. He alleged that two outgoing letters to his attorneys were opened on January 9. With respect to one of these letters, Mangiaracina explained that he had complained to a correctional officer, who "said he knew about it and [said] it was de[a]lt with." Mangiaracina alleged that a few days later, an incoming letter from an attorney was improperly opened. On January 22, 2013, a jail employee again "opened a letter going out to [his] attorney."

According to the complaint, problems with the handling of Mangiaracina's legal mail persisted despite his repeated complaints and grievances. He alleged that on February 27, 2013, a jail employee "opened a letter going out to" his attorney. Finally, on March 12, 2013, a jail employee opened an incoming letter from an attorney. Mangiaracina attached his grievance related to the March 12 incident, which explained that the "legal mail was opened [and] taped shut prior to delivery to inmate," and that it "came up in [the] mail that way." Mangiaracina received the same response from the mailroom that he had received with respect to the November 9, 2012 incident: "The mailroom documents any legal mail that come[s] in torn-open or damaged. According to our records you[r] legal mail was delivered to the 4th Ave. Jail sealed and un-opened." There was no further response explaining whether (or why) the mail was opened at the jail prior to delivery.

In Mangiaracina's complaint, he further alleged that he had "[six] pending trials in superior court[] and [one] federal

case pending."**³**   In describing his injury resulting from the improper opening of his legal mail, Mangiaracina alleged that he and his two "attorneys are af[]raid to communicate by mail which is hard as I have so many cases and so much pap[]erwork to go back and forth."  He further explained that his "right to confidentiality and privacy was violated" and that his "defense strategy and [his] rights in general were just shredded."  Mangiaracina also reported that an officer had told him that "they can open [legal mail] outside our presence if they want to," that "there is no law against it," and that "they just do it in our presence as a [courtesy]."

---

**³** We grant Defendants' motion to take judicial notice of the six criminal indictments pending against Mangiaracina in Maricopa County Superior Court at the time of the incidents.  We also grant Defendants' motion to take judicial notice of the docket sheet in the criminal case in the United States District Court for the District of Arizona in which Mangiaracina was sentenced in February 2006 to seventy-eight months of imprisonment and thirty-six months of supervised release. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotation marks and citation omitted)).

It is not clear from the record whether the federal case that Mangiaracina referred to in his complaint was related to his prior conviction.  Defendants do not contest that Mangiaracina's six pending trials in Superior Court were criminal trials, nor do they contest that Mangiaracina's correspondence with his attorneys was related to his state or federal criminal cases.  If on remand and after discovery, it becomes clear that some of Mangiaracina's legal correspondence was civil in nature, the district court can address any incidents related to civil legal mail in light of Mangiaracina's First Amendment claim. *See* Part III.B, *infra*.

Mangiaracina initially filed suit in Arizona superior court pursuant to 28 U.S.C. § 1983, alleging violations of his First and Sixth Amendment rights by a number of jail employees and John Doe defendants. Defendants removed the case to federal court. The district court found that removal was proper and dismissed the original complaint for failure to state a claim, but granted Mangiaracina leave to amend. After a series of amendments, the court ultimately dismissed Mangiaracina's Third Amended Complaint with prejudice. The district court noted that Mangiaracina had failed to specifically allege that the pieces of mail were marked as "legal mail" and that, for most of the instances, he failed to explain how he knew the mail was opened outside his presence. The court acknowledged that Mangiaracina did provide additional details for the incidents occurring in September 2011, on March 23, 2012, and on November 9, 2012. The court concluded, however, that even assuming the three items were properly marked as legal mail, these "isolated incidents" did not violate Mangiaracina's constitutional rights. Mangiaracina timely appealed.

## II.

We review de novo a district court's dismissal of a complaint under 28 U.S.C. § 1915A for failure to state a claim. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). We construe all facts in the light most favorable to the plaintiff, and we construe a pro se complaint liberally. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). "Pro se complaints . . . may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation marks omitted).

**III.**

**A.**

Mangiaracina argues that the district court erred in dismissing his Sixth Amendment claim. We reverse the district court's dismissal of this claim as to two counts of illegal mail opening and affirm the dismissal of the remaining counts.

The Supreme Court addressed the inspection of prisoners' legal mail in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, a group of prisoners challenged, inter alia, a prison regulation that authorized correctional officers to open and inspect all incoming mail for contraband. The regulation included legal mail but provided that such mail was to be inspected in the presence of the prisoner to whom it was addressed. The plaintiffs argued that legal mail should be exempted from the inspection requirement entirely. The Court held that "inspection or perusal" of legal mail was permissible. *Id.* at 576. In the Court's view, the challenged regulation could not have the effect of "chill[ing attorney-client] communications, since the inmate's presence insures that prison officials will not *read* the mail." *Id.* at 577 (emphasis added). Because the inmate's presence adequately protected any rights at stake, the Court did not identify the constitutional source or scope of these rights. *Id.* at 575–77.

We recently addressed prisoners' legal mail rights in *Nordstrom*, 762 F.3d 903. In that case, a prisoner alleged that he had written a letter to his criminal attorney and that a correctional officer, instead of inspecting the letter in Nordstrom's presence before sealing and sending it, stood in front of him and read the letter. We held that this event,

though isolated, sufficiently alleged a violation of Nordstrom's Sixth Amendment right to counsel. Although the case concerned improper reading rather than improper opening of legal mail, we noted that "the practice of requiring an inmate to be present when his legal mail is opened is a measure designed to *prevent* officials from reading the mail in the first place." *Id.* at 910 (citing *Wolff*, 418 U.S. at 577); s*ee also Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended on denial of rehearing by* 135 F.3d 1318 (9th Cir. 1998) (declining to decide "whether mail clearly sent from a lawyer to an inmate but lacking the 'Legal Mail' designation may be opened outside the presence of the inmate"); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (recognizing that "the relevant event for purposes of analyzing [the defendant's] culpability is the alleged constitutional injury, the guard's opening of the letter outside [the prisoner's] presence."). Thus, we have recognized that prisoners have a Sixth Amendment right to confer privately with counsel and that the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right.

Other circuit courts have similarly recognized the importance of this practice. In *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006), the Third Circuit recognized, in the context of a First Amendment challenge, that opening legal mail outside the addressee's presence

> deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications. This is so because the only way to ensure that mail

> is not read when opened is to require that it be
> done in the presence of the inmate to whom it
> is addressed.

*Id.* (internal quotation marks, alteration, and citation omitted). The Sixth Circuit has similarly acknowledged that a "prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process" and has determined that "[t]here is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise." *Sallier v. Brooks*, 343 F.3d 868, 877–78 (6th Cir. 2003); *see also*, *e.g.*, *Al-Amin v. Smith*, 511 F.3d 1317, 1331 (11th Cir. 2008) ("[I]nmates have a constitutionally protected right to have their properly marked attorney mail opened in their presence."). The same concerns animate Mangiaracina's Sixth Amendment challenge, which is predicated on the chilling of his protected communications with criminal attorneys. *See Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("[O]pening properly marked legal mail alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a 'chilling effect.'" (quoting *Sallier*, 343 F.3d at 877)). We therefore now clarify that, under *Nordstrom*, prisoners have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected.

## B.

Mangiaracina has alleged sufficient facts to state a claim for improper opening of his incoming legal mail on November 9, 2012 and March 12, 2013. For each of these incidents, Mangiaracina attached his grievance form and the

response he received from jail officials.  For the November 9 incident, the response confirmed that the mail had been delivered to the jail sealed but had been opened and stapled shut prior to delivery to Mangiaracina.  For the March 12 incident, Mangiaracina specifically alleged in his grievance that the letter had been "opened [and] taped shut prior to delivery."  The allegations in the complaint and attached documents sufficiently allege that these two pieces of mail were opened outside Mangiaracina's presence.  In the two responses from the facility, jail officials characterize both pieces of mail as "legal mail."  At the pleading stage, these allegations are sufficient to allege that the envelopes were properly marked as legal mail.  Further, Mangiaracina alleges that he was informed by an officer that jail employees "can open [legal mail] outside our presence if they want to," that there is no law against it, and that "they just do it in our presence as a [courtesy]."  These two counts therefore sufficiently allege violations of Mangiaracina's right to have his confidential, properly-marked legal mail opened in his presence.  For the remaining counts, the district court correctly determined that Mangiaracina failed to allege that the mail was properly marked as legal mail, so these counts were properly dismissed.

The absence of a clear pattern beyond these two incidents does not preclude relief.  In *Nordstrom*, we recognized that even a single instance of improper reading of a prisoner's mail can give rise to a constitutional violation.  Thus, even isolated incidents of improper mail opening may, in appropriate circumstances, be sufficient to allege a Sixth Amendment violation.  *Cf. Merriweather*, 569 F.3d at 317 (6th Cir. 2009) ("Two or three pieces of [a prisoner's legal] mail opened in an arbitrary or capricious way suffice to state a [First Amendment] claim.").

Defendants argue that this case is distinguishable from *Nordstrom* because Mangiaracina does not allege that jail officials ever *read* his mail.  But indeed, how could he?  If the practice of opening legal mail in the presence of the prisoner is designed to prevent correctional officers from reading it, then the natural corollary is that a prisoner whose mail is opened outside his presence has no way of knowing whether it had been (permissibly) inspected or (impermissibly) read. In other words, Mangiaracina could not in good faith have alleged that jail employees had read his mail, since he had no basis for knowing what had happened to his mail prior to delivery. *See* Scott Dodson, *New Pleading, New Discovery*, 109 Mich. L. Rev. 53, 54 (2010) ("[P]laintiffs proceeding with claims that depend upon facts exclusively in the hands (or minds) of defendants and third parties may find themselves in a Catch-22: plaintiff needs those facts to plead her claim properly and survive a 'Twiqbal' motion to dismiss, but she may not be able to discover those facts without first surviving the motion to dismiss.").

*Nordstrom* presented the rare situation in which a prisoner actually witnessed a correctional officer open and read his legal mail.  To hold that an officer could stop short of a prisoner's cell, open and read a letter, and then deliver it to the prisoner without giving rise to an actionable claim would elide the central holding of *Nordstrom*.

Nor do Defendants identify any legitimate penological interest that would be served by opening legal mail outside Mangiaracina's presence.  Jails and prisons may impose certain restrictions on incoming mail, so long as the restrictions are "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989).  We

defer to the judgment of corrections authorities, particularly with regard to matters of security, because we recognize that "[r]unning a prison [or jail] is an inordinately difficult undertaking" with which prison or jail authorities have particular expertise. *Turner*, 482 U.S. at 84–85. This deference, however, only comes into play when the facility offers a legitimate justification for the challenged practice. "[I]f the prison fails to show that the regulation is rationally related to a legitimate penological objective, we do not consider the other factors" of the *Turner* test. *Ashker v. California Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003).

Here, the stated policy of the Maricopa County Jails is to open all legal mail in the presence of the prisoner, and Defendants have identified no reason in their briefing for deviating from this policy. No special deference is therefore required. *See Al-Amin*, 511 F.3d at 1331 (11th Cir. 2008) ("[O]pening an inmate's attorney mail in his presence . . . 'fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests.'" (quoting *Turner*, 482 U.S. at 91)).

Nevertheless, Defendants attempt to argue on appeal that any deviations were isolated and accidental. We have already explained why even isolated incidents may support a Sixth Amendment claim. *See* Part III.B, *supra*. Additionally, whether an isolated incident was also accidental is a question of fact that we do not resolve on a motion to dismiss. At this stage, we accept all allegations of material fact as true and construe them in the light most favorable to the plaintiff. *Nordstrom*, 762 F.3d at 908.

As we have emphasized in the past, "[a] criminal defendant's ability to communicate candidly and

confidentially with his lawyer is essential to his defense."
*Nordstrom*, 762 F.3d at 910. Mangiaracina alleged that jail
officials had repeatedly opened his legal mail and that an
officer had told him that "there is no law against" opening
legal mail before delivering it to a prisoner and "they just do
it in [the prisoner's] presence as a courtesy." Mangiaracina
was justifiably concerned that his attorney-client
communications would not be kept confidential. As a result,
Mangiaracina and his attorneys were "af[]raid to
communicate by mail," which he described as "hard as I have
so many cases and so much paperwork to go back and forth."
By necessity, prisoners and pre-trial detainees rely heavily on
the mail for communication with their attorneys. The
Maricopa County jail system does not allow incoming phone
calls or provide access to e-mail, and outgoing phone calls
can only be placed as collect calls. *See* Maricopa County
Jails, *Rules and Regulations for Inmates* § 25, at 35.
Moreover, as Mangiaracina noted in his complaint, criminal
cases often involve paperwork that can only feasibly be
transported by mail. As Mangiaracina put it, his "right to
confidentiality and privacy was violated as well as [his]
defense strategy and [his] rights in general were just
shredded." These allegations are sufficient to state a claim
for violation of Mangiaracina's Sixth Amendment right to
counsel.

## C.

Mangiaracina also argues that the district court erred in
dismissing his First Amendment claim. In *Hayes v. Idaho
Correctional Center*, No. 14-35078 (9th Cir. Mar. 3, 2017),
filed concurrently with this opinion, we held that the First
Amendment protects prisoners' right to have legal mail
opened in their presence. Accordingly, we reverse the

dismissal of Mangiaracina's First Amendment claim, and we remand to the district court for consideration of this claim in light of *Hayes*, if necessary.

*          *          *

For the reasons set forth above, we reverse the district court's dismissal of Mangiaracina's Sixth Amendment and First Amendment claims with respect to the incidents on November 9, 2012 and March 12, 2013. We affirm the district court's dismissal of the remaining counts of alleged improper mail opening.

**The judgment is AFFIRMED in part, REVERSED in part, and REMANDED.**

Each party shall bear its own costs on appeal.

---

BYBEE, Circuit Judge, concurring in the judgment:

I concur in the conclusion in Part III.A of the majority opinion, that prisoners have a general Sixth Amendment right to be present when legal mail related to a criminal matter is inspected. I write separately because I don't think the majority has explained with sufficient clarity what is required to state a Sixth Amendment claim under 42 U.S.C. § 1983. I am deeply concerned that the majority opinion's characterization of *Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014), and out-of-circuit cases which dealt with either intentional acts or pattern-and-practice allegations, Maj. Op. 10–12, may mislead the district courts and the parties into thinking that merely negligent conduct is sufficient to state a

claim under 42 U.S.C. § 1983. It is not. If it was once not clear, it is now beyond question that § 1983 requires proof of intentional, not merely negligent, acts depriving a party of his constitutional rights.[1]

I

In *Paul v. Davis*, the Supreme Court rejected the notion that § 1983 had converted "the Fourteenth Amendment [into] a font of tort law to be superimposed upon whatever systems may already be administered by the States." 424 U.S. 693, 701 (1976). It was easier to say than to enforce, and the Supreme Court had its own missteps in determining what kind of constitutional torts § 1983 covers. In 1977, the Court granted certiorari in *Procunier v. Navarette*, 434 U.S. 555 (1978), to decide whether prison officials' negligent handling of a prisoner's outgoing mail could be the basis for damages under § 1983. The Court never got there; instead, it decided the case on the basis of qualified immunity and left to another day the critical question of whether § 1983 covered negligent conduct. *Id.* at 559 n.6 (1978). *See Baker v. McCollan*, 443 U.S. 137, 138 (1979) (explaining how *Procunier* dodged the question). Two years later, in *Parratt v. Taylor*, 451 U.S. 527 (1981), the Court considered whether § 1983 was a proper vehicle to compensate a prisoner under the Due Process Clause for a negligent loss of his property. The Court said that "the alleged loss, even though negligently caused,

---

[1] Portions of this concurrence are identical to portions of my concurrence in the companion case, *Hayes v. Idaho Correctional Center*, No. 14-35078, — F.3d — (9th Cir. 2017). This case addresses the Sixth Amendment right to be present when legal mail is inspected by prison guards; Hayes addresses the First Amendment right to be present. The principles are nearly the same, and my concerns are the same.

amounted to a deprivation" and was actionable under § 1983. *Id.* at 536–37. Five years later, the Court overruled *Parratt* in *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986). This time the Court concluded that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328. The Court stated that "lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id.* at 332. "Our Constitution," the Court wrote, "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* Nevertheless, the Court would "not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care." *Id.* at 334.

Notwithstanding the Court's reservation of judgment, *Daniels*'s logic has since been extended, amendment by amendment, to other fundamental rights protected by the Bill of Rights. And, so far as I can determine, no court has held that a § 1983 claim can be proved by mere negligent conduct. For example, in the First Amendment free exercise context, negligence on the part of a government official is not enough to show a violation of constitutional rights sufficient to state a claim for relief under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (dismissing § 1983 claim because "an isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion"); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause.");

*Lewis v. Mitchell*, 416 F. Supp. 2d 935, 944 (S.D. Cal. 2005) (holding more than negligence is required to state a valid § 1983 claim for violation of prisoner's First Amendment right to freely exercise religion); *Shaheed v. Winston*, 885 F. Supp. 861 (E.D. Va. 1995) (finding "defendants [sic] actions were negligent, not intentional, and the plaintiffs may not rely on § 1983 as a basis for this claim"), *aff'd on other grounds*, 161 F.3d 3 (4th Cir. 1998) (unpublished).

Similarly, in access-to-court cases, also under the First Amendment, the circuit courts have uniformly held that negligence is not sufficient to raise a claim under § 1983. The Seventh Circuit, for example, has found that "a mere isolated incident of negligence . . . does not rise to the level of a constitutional violation actionable under section 1983." *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992); *see also Crawford-El v. Britton*, 951 F.2d 1314, 1318 (D.C. Cir. 1991) (holding that intentional interference with access to court violates Constitution)); *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995) (holding that negligent conduct in misrouting a form does not violate the First Amendment's right to petition).

In the Fourth Amendment context, the Supreme Court has held that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citations omitted). The Supreme Court found support for this holding in the text of the Fourth Amendment, since seizure does not imply an "unknowing act," as well as the history of the Fourth Amendment, which was addressed to "'misuse of power,' not the accidental effects of otherwise

lawful government conduct." *Id.* (citation omitted). The Court elaborated:

> [I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Id.* at 596–97. We have similarly held that to state a Fourth Amendment claim against a government investigator for submitting false and material information in a warrant affidavit, "a § 1983 plaintiff must show that the investigator 'made *deliberately* false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." *Galbraith v. Cty.*

*of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (emphasis added) (citation omitted).

In the Eighth Amendment context, the Supreme Court has found that more then negligence is required to raise a claim for cruel and unusual punishment. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Estelle*, the Supreme Court rejected an Eighth Amendment claim based on inadvertent failure to provide adequate medical care:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

429 U.S. at 107. In *Wilson*, the Court added that "'[i]t is *only* such indifference' that can violate the Eighth Amendment; allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent . . . diagnos[is]' simply fail to establish the requisite culpable state of mind." 501 U.S. at 297 (quoting *Estelle*, 429 U.S. at 105–06) (alteration in original) (citations omitted).

These same considerations should inform our judgment about the Sixth Amendment right to be present when legal mail related to a criminal matter is inspected. There is

nothing about the attorney-client relationship that suggests that merely inadvertent conduct that touches on that relationship is a constitutional violation. The courthouse custodian who accidentally walks in on an attorney-client conference may "chill" their conversation, but—without more—has done nothing actionable under § 1983. Similarly, the mail clerk who accidentally opens legal mail, seals it up, and notes "opened by mistake, and not read" has not violated the Sixth Amendment, even if the prisoner-recipient is unhappy to receive his mail in that format. If the prisoner doubts the veracity of the mail clerk, or has seen a broad pattern of improperly opened legal mail, the prisoner should allege that the act is intentional or that an inference of intent should be drawn from the pattern and practice. To fail to recognize the importance of alleging intentional conduct would be to risk strict liability claims under § 1983, something no court has ever approved.

## II

Applying the above principles to Mangiaracina's claim, Mangiaracina has alleged a "policy and practice" of illegally opening inmates mail. He alleged at least four instances where his legal mail was opened outside his presence and that prison employees stated they can open legal mail outside the prisoner's presence "if they want to" and there is "no law against it." These are sufficient facts to allege a constitutional violation at the pleading stage of the litigation for the opening of Mangiaracina's incoming legal mail on November 9, 2012 and March 12, 2013.

A

The majority opinion focuses on whether the *number* of incidents was sufficient to state a cause of action but overlooked the question of the *nature* of the incidents alleged. The opinion concludes that two incidents in four months "sufficiently allege" violations of  Mangiaracina's Sixth Amendment right to counsel,[2] and "[t]he absence of a clear pattern beyond these two incidents does not preclude relief." Maj. Op. at 13.  To reach this conclusion, the opinion relies heavily on our recent decision in *Nordstrom* for the proposition that a "single instance" of improper reading of a prisoner's mail can give rise to a constitutional violation. Maj. Op. at 13 (citing *Nordstrom*, 762 F.3d 903).  However, the single incident in *Nordstrom* was sufficient because it "was not simply a one-time mistake or confusion over the contours of the [prision] policy . . . the [prison d]irector ha[d] personally informed [Nordstrom] that prison officials are permitted to read his legal mail." *Nordstrom*, 762 F.3d at 911–12.  There, as our opinion noted, the prison officials openly read Nordstrom's mail in front of him and over his protests.  *Id.* at 906.  And, the prison's response to the prisoner's grievance was not that this was a mere accident or an isolated instance of reading legal mail, but rather that its policy permitted guards to read legal mail as long as it was

---

[2] The majority notes Defendants have not offered "any legitimate penological interest that would be served by" opening Mangiaracina's legal mail.  Maj. Op. at 14.  However, the test created in *Turner v. Safley*, 482 U.S. 78 (1987), was directed at prison *regulations*.  *Id.* at 89.  I am not sure how the test even applies to inadvertent conduct.  What penological reason can the State offer if someone opened the letter by mistake?  The opinion thus strongly suggests that mistake or inadvertence is not a legitimate penological reason.  If so, Mangiaracina's claim nearly sounds in strict liability.

done in the prisoner's presence.  *Id.* at 907 (noting that the prison director's response to grievance reasoned that "[s]taff is authorized to scan and is not prohibited from reading the mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter" (alteration in original)).  The prison regulations, in fact, prohibited reading outgoing attorney-client correspondence.  *Id.* at 910–11. *Nordstrom* is consistent with the principle that § 1983 covers only intentional acts affecting constitutional rights.

The majority opinion concludes that "even isolated incidents of improper mail opening may, in appropriate circumstances, be sufficient to allege a Sixth Amendment violation."  Maj. Op. at 13.  The majority does not outline what such "appropriate circumstances are," but proceeds to quote the holding in *Merriweather v. Zamora*, 569 F.3d 307, 318 (6th Cir. 2009), that "[t]wo or three pieces of [a prisoner's legal] mail opening in an arbitrary or capricious way suffice to state a [Sixth] Amendment claim."  Maj. Op. at 13 (alteration in original).  I regret that the majority has introduced an "arbitrary or capricious" standard into the evaluation of § 1983 claims under the Sixth Amendment. That standard is well-known in the administrative law context, where it is prescribed by statute, 5 U.S.C. § 706(2)(A), but it is not a familiar standard for judging constitutional torts.  The majority borrows the phrase from the Sixth Circuit, where it apparently originated in *Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986).  *See id.* at 604 ("[T]his case concerns Turner's arbitrary opening and reading of Giles' personal mail. . . . A capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment.").  But we shouldn't mistake "arbitrary and capricious" conduct in this context as something less than "intentional conduct."  The case that gave

us the unfortunate phrase, *Parrish*, involved intentional conduct: the prisoner, who was paraplegic, "testified that [a prison guard] would randomly open and read his personal mail and that [the guard] would also taunt him by waving the open mail in front of him." *Id.* at 603. The court observed that the case did not involve "a regularly applied regulation . . . or a random interference with a prisoner's mail." *Id.* at 604. *Parrish* involved an allegation that the defendant had intentionally violated the prisoner's rights. Other Sixth Circuit cases, which have continued to use the imprecise "arbitrary and capricious" language, also involve allegations of intentional or pattern-and-practice conduct. *See*, *e.g.*, *Merriweather*, 569 F.3d at 317 (finding that sixteen instances of improperly opened legal mail were sufficient to state a cause of action); *Sallier v. Brooks*, 343 F.3d 868, 872, 879–80 (6th Cir. 2003) (upholding a damage award where the prisoner could prove that officials had deliberately opened three pieces of legal mail and the prisoner "had filed a written request to have such mail opened only in his presence"); *Lavado v. Keohane*, 992 F.2d 601, 610 (6th Cir. 1993) (holding it was sufficient that the prisoner alleged that a Bureau of Prisons employee had "blatant disregard for established regulations [that gave] rise to an inference of arbitrary or capricious action" and noting that the prisoner had alleged that defendant "read Lavado's properly marked correspondence and proceeded to give Lavado his business card so Lavado would be able to spell his name correctly when Lavado sued"); *Reneer v. Sewell*, 975 F.2d 258, 259–60 (6th Cir. 1992) ("[I]f the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such behavior by prison officials might [be] . . . arbitrary action . . ."). The decisions cited by the majority from other circuits are not to the contrary. *See*, *e.g.*, *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008) (finding prisoner alleged "pattern

and practice of opening . . . clearly marked attorney mail"); *Jones v. Brown*, 461 F.3d 353, 359–60 (3d Cir. 2006) (noting prison policy required officials to open all mail outside the presence of prisoners in order to screen for anthrax and "[a] state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate" violates constitutional rights); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" (citations omitted)).

I wish the majority had simply stated the obvious for the benefit of the parties and the district court: in order to survive a motion to dismiss—much less prevail on the merits—the plaintiff must allege some kind of deliberate action on the part of prison officials. An allegation that prison officials opened a prisoner's legal mail, without an allegation that the mail was deliberately and not negligently opened, is not sufficient to state a cause of action under § 1983.

B

The opinion concludes that Mangiaracina has alleged sufficient facts to state a claim for two instances of improper legal mail opening (November 9, 2012 and March 12, 2013). In both instances, the prison responded to Mangiaracina's grievance by noting the mail had been delivered from the off-site mail room to the Fourth Avenue Jail, where he was housed, "sealed and un-opened." Mangiaracina alleges that sometime between delivery to the jail and delivery to Mangiaracina's pod, the mail was improperly opened "in the

jail somewhere mail does not get opened." The prison could not provide a reason it was opened.

These allegations, by themselves, are not sufficient to state a cause of action under § 1983. In the end, however, I join the majority in concluding that Mangiaracina has said enough at this stage of the proceedings to allege a constitutional tort. As the majority explains, Mangiaracina also pled that his legal mail continually gets opened and, in response to his grievance, an officer told him "they can open [legal mail] outside [a prisoner's] presence if they want to." The officer said "there is no law against it[,] they just do it in [the prisoner's] presence as a courtesy." The official's statements indicate the conduct was "not simply a one-time mistake or confusion over the contours of the [Maricopa] policy." *Nordstrom*, 762 F.3d at 911. Although Maricopa County Jails rules and regulations comply with the requirements of today's holding, Maj. Op. at 5, that written policy alone is insufficient if prison staff are intentionally ignoring that policy since it is just "a courtesy" and not the "law." Showing a "blatant disregard for established regulations" is sufficient to raise an inference of intentional conduct to survive a motion to dismiss. *Lavado*, 922 F.2d at 611.

At this stage in the litigation, we must accept all allegations of material fact as true and construe them in the light most favorable to the plaintiff. *Nordstrom*, 762 F.3d at 908. Construing Mangiaracina's pro se complaint liberally, I conclude that Mangiaracina has sufficiently claimed that someone is intentionally, rather than merely accidentally,

opening his legal mail in violation of his Sixth Amendment rights. He may or may not be able to prove his claim, but he has said just enough to get the opportunity.

On that basis, I concur in the judgment.