BYBEE, Circuit Judge,
concurring in the judgment:
I concur in the conclusion in Part III.A of the majority opinion, that prisoners have a general First Amendment right to be present when legal mail related to a civil matter is inspected. I write separately because I don’t think the majority has explained with sufficient clarity what is required to state a First Amendment claim under 42 U.S.C. § 1983. I am deeply concerned that the majority opinion’s characterization of Nordstrom v. Ryan, 762 F.3d 903 (9th Cir. 2014), and out-of-circuit cases which dealt with either intentional acts or pattern-and-practice allegations, Maj. Op. at 1208-12, may mislead the district courts and the parties into thinking that merely *1214 negligent conduct is sufficient to state a claim under 42 U.S.C. § 1983. It is not. If it was once not clear, it is now beyond question that § 1983 requires proof of intentional, not merely negligent, acts depriving a party of his constitutional rights.[1]
I
In Paul v. Davis, the Supreme Court rejected the notion that § 1983 had converted “the Fourteenth Amendment [into] a font of tort law to be superimposed upon whatever systems may already be administered by the States.” 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). It was easier to say than to enforce, and the Supreme Court had its own missteps in determining what kind of constitutional torts § 1983 covers. In 1977, the Court granted certiorari in Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), to decide whether prison officials’ • negligent handling of a prisoner’s outgoing mail could be the basis for damages under § 1983. The Court never got there; instead, it decided the case on the basis of qualified immunity and left to another day the critical question of whether § 1983 covered negligent conduct. Id. at 559 n.6, 98 S.Ct. 855. See Baker v. McCollan, 443 U.S. 137, 138, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (explaining how Procu-nier dodged the question). Two years later, in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Court considered whether § 1983 was a proper vehicle to compensate a prisoner under the Due Process Clause for a negligent loss of his property. The Court said that “the alleged loss, even though negligently caused, amounted to a deprivation” and was actionable under § 1983. Id. at 536-37, 101 S.Ct. 1908. Five years later, the Court overruled Parrott in Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). This time the Court concluded that “the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.” Id. at 328, 106 S.Ct. 662. The Court stated that “lack of due care süggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.” Id. at 332, 106 S.Ct. 662. “Our Constitution,” the Court wrote, “does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.” Id. Nevertheless, the Court would “not rule out the possibility that there are other constitutional provr sions that would be violated by mere lack of care.” Id. at 334, 106 S.Ct. 662.
Notwithstanding the Court’s reservation of judgment, Daniels’s logic has since been extended, amendment by amendment, to other fundamental rights protected by the Bill of Rights. And, so far as I can determine, no court has held that a § 1983 claim can be proved by mere negligent conduct. For example, in the First Amendment free exercise context, negligence on the part of a government official is not enough to show a violation of constitutional rights sufficient to state a claim for relief under § 1983. See Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009) (dismissing § 1983 claim because “an isolated act of negligence would not violate an inmate’s *1215 First Amendment right to free exercise of religion”); Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006) (“[Negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause.”); Lewis v. Mitchell, 416 F.Supp.2d 935, 944 (S.D. Cal. 2005) (holding more than negligence is required to state a valid § 1983 claim for violation of prisoner’s First Amendment right to freely exercise religion); Shaheed v. Winston, 885 F.Supp. 861 (E.D. Va. 1995) (finding “defendants [sic] actions were negligent, not intentional, and the plaintiffs may not rely on § 1983 as a basis for this claim”), aff'd on other grounds, 161 F.3d 3 (4th Cir. 1998) (unpublished).
Similarly, in access-to-court cases, also under the First Amendment, the circuit courts have uniformly held that negligence is not sufficient to raise a claim under § 1983. The Seventh Circuit, for example, has found that “a mere isolated incident of negligence ... does not rise to. the level of a constitutional violation actionable under section 1983.” Kincaid v. Vail, 969 F.2d 594, 602 (7th Cir. 1992); see also Crawford-El v. Britton, 951 F.2d 1314, 1318 (D.C. Cir. 1991) (holding that intentional interference with access to court violates Constitution); Pink v. Lester, 52 F.3d 73, 76 (4th Cir. 1995) (holding that negligent conduct in misrouting a form does not violate the First Amendment’s right to petition).
In the Fourth Amendment context, the Supreme Court has held that “[violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful.” Brower v. Cty. of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (citations omitted). The Supreme Court found support for this holding in the text of the Fourth Amendment, since seizure does not imply an “unknowing act,” as well as the history of the Fourth Amendment, which was addressed to “ ‘misuse of power,’ not the accidental effects of otherwise lawful government conduct.” Id. (citation omitted). The Court elaborated:
[I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant — even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual’s freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual’s freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.
Id. at 596-97, 109 S.Ct. 1378. We have similarly held that to state a Fourth Amendment claim against a government investigator for submitting false and material information in a warrant affidavit, “a § 1983 plaintiff must show that the investigator ‘made deliberately false statements or recklessly disregarded the truth in the-affidavit’ and that the falsifications were ‘material’ to the finding of probable cause.” Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002) (emphasis added) (citation omitted).
In the Eighth Amendment context, the Supreme Court has found that more then negligence is required to raise a claim for *1216 cruel and unusual punishment. Wilson v. Setter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In Estelle, the Supreme Court rejected an Eighth Amendment claim based on inadvertent failure to provide adequate medical care:
[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.
429 U.S. at 107, 97 S.Ct. 285. In Wilson, the Court added that “ ‘[i]t is only such indifference’ that can violate the Eighth Amendment; allegations of ‘inadvertent failure to provide adequate medical care’ or of a ‘negligent ... diagnoses]’ simply fail to establish the requisite culpable state of mind.” 501 U.S. at 297, 111 S.Ct. 2321 (quoting Estelle, 429 U.S. at 105-06, 97 S.Ct. 285) (alteration in original) (citations omitted).
These same considerations should inform our judgment about the First Amendment right to be present when legal mail related to a civil matter is inspected. There is nothing about the attorney-client relationship that suggests that merely inadvertent conduct that touches on that relationship is a constitutional violation. The courthouse custodian who accidentally walks in on an attorney-client conference may “chill” their conversation, but — without more — has done nothing actionable under § 1983. Similarly, the mail clerk who accidentally opens legal mail, seals it up, and notes “opened by mistake, and not read” has not violated the First Amendment, even if the prisoner-recipient is unhappy to receive his mail in that format. If the prisoner doubts the veracity of the mail clerk, or has seen a broad pattern of improperly opened legal mail, the prisoner should allege that the act is intentional or that an inference of intent should be drawn from the pattern and practice. To fail to recognize the importance of alleging intentional conduct would be to risk strict liability claims under § 1983, something no court has ever approved.
II
Applying the above principles to Hayes’s claim, Hayes has alleged a “policy and practice” of illegally opening inmates’ mail — particularly “inmates who are charged with sex offenses.” These are sufficient facts to allege a constitutional violation at the pleading stage of the litigation, even though the State has offered an account of the opening of Hayes’s incoming legal mail on December 28, 2010 and March 2, 2011 that calls his allegations into question.
A
The majority opinion focuses on whether the number of incidents was sufficient to state a cause of action but overlooked the question of the nature of the incidents alleged. The opinion concludes that two incidents in two months “state[] a First Amendment claim on the facts alleged.”[2] *1217 Maj. Op. at 1213. To reach this conclusion, the opinion relies heavily on our recent decision in Nordstrom, for the proposition that a “single instance” of improper reading of a prisoner’s mail can give rise to a constitutional violation. Maj. Op. at 1208-09 (citing Nordstrom, 762 F.3d 903). However, the single incident in Nordstrom was sufficient because it “was not simply a onetime mistake or confusion over the contours of the [prisión] policy ... the [prison d]irector ha[d] personally informed [Nord-strom] that prison officials are permitted to read his legal mail.” Nordstrom, 762 F.3d at 911-12. There, as our opinion noted, the prison officials openly read Nord-strom’s mail in front of him and over his protests. Id. at 906. And, the prison’s response to the prisoner’s grievance was not that this was a mere accident or an isolated instance of reading legal mail, but rather that its policy permitted guards to read legal mail as long as it was done in the prisoner’s presence. Id. at 907 (noting that the prison director’s response to grievance reasoned that “[s]taff is authorized to scan and is not prohibited from reading the mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter” (alteration in original)). The prison regulations, in fact, prohibited reading outgoing attorney-client correspondence. Id. at 910-11. Nordstrom is consistent with the principle that § 1983 covers only intentional acts affecting constitutional rights.
The majority opinion later concludes that “[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim.” Maj. Op. at 1211 (alteration in original) (quoting Merriweather v. Zamora, 569 F.3d 307, 318 (6th Cir. 2009)). I regret that the majority has introduced an “arbitrary or capricious” standard into the evaluation of § 1983 claims under the First Amendment. That standard is well-known in the administrative law context, where it is prescribed by statute, 5 U.S.C. § 706(2)(A), but it is not a familiar, standard for judging constitutional torts. The majority borrows the phrase from the Sixth Circuit, where it apparently originated in Parrish v. Johnson, 800 F.2d 600 (6th Cir. 1986). See id. at 604 (“[T]his case concerns Turner’s arbitrary opening and reading of Giles’ personal mail. ... A capricious interference with a prisoner’s incoming mail based upon a guard’s personal prejudices violates the First Amendment.”). But we shouldn’t mistake “arbitrary and capricious” conduct in this context as something less than “intentional conduct.” The case that gave us the unfortunate phrase, Parrish, involved intentional conduct: the prisoner, who was paraplegic, “testified that [a prison guard] would randomly open and read his personal mail and that [the guard] would also taunt him by waving the open mail in front of him.” Id. at 603. The court observed that the case did not involve “a regularly applied regulation ... or a random interference with a prisoner’s mail.” Id. at 604. Parrish involved an allegation that the defendant had intentionally violated the prisoner’s rights. Other Sixth Circuit cases, which have continued to use the imprecise “arbitrary and capricious” language, also involve allegations of intentional or pattern- and-practice conduct. See, e.g., Merriweather, 569 F.3d at 317 (finding that sixteen instances of improperly opened legal mail were sufficient to state a cause of action); Saltier v. Brooks, 343 F.3d 868, 872, 879-80 (6th Cir. 2003) (upholding a damage award where the prisoner could prove that officials had deliberately opened three pieces of legal mail and the prisoner “had filed a written request to have such mail opened only in his presence”); Lavado v. Keohane, 992 F.2d 601, 610 (6th Cir. 1993) (holding it was sufficient that the prisoner alleged that a Bureau of Prisons employee had “blatant disregard for established regulations [that gave] rise to an *1218 inference of arbitrary or capricious action” and noting that the prisoner had alleged that defendant “read Lavado’s properly marked correspondence and proceeded to give Lavado his business card so Lavado would be able to spell his name correctly when Lavado sued”); Reneer v. Sewell, 975 F.2d 258, 259-60 (6th Cir. 1992) (“[I]f the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such behavior by prison officials might [be] ... arbitrary action ... ”). The decisions cited by the majority from other circuits are not to the contrary. See, e.g., Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008) (finding prisoner alleged “pattern and practice of opening ... clearly marked attorney mail”); Jones v. Brown, 461 F.3d 353, 359-60 (3d Cir. 2006) (noting prison policy required officials to open all mail outside the presence of prisoners in order to screen for anthrax and “[a] state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate” violates constitutional rights); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (“[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials ‘regularly and unjustifiably interfered with the incoming legal mail.’ ” (citations omitted)).
I wish the majority had simply stated the obvious for the benefit of the parties and the district court: in order to survive a motion to dismiss — much less prevail on the merits — the plaintiff must allege some kind of deliberate action on the part of prison officials. An allegation that prison officials opened a prisoner’s legal mail, without an allegation that the mail was deliberately and not negligently opened, is not sufficient to state a cause of action under § 1983. .
B
The opinion concludes that Hayes has alleged sufficient facts to state a claim for two instances of improper legal mail opening (December 28, 2010 and March 2, 2011). With respect to the December incident, Hayes alleged he received “legal mail ... which had already been opened.” The prison’s response to the grievance he filed includes information gathered from various employees in the prison. The opinion notes that Case Manager Fink stated that “there was a piece of tape on the envelope but [prison officials] could not tell if it were [sic] sent through the mail this way or opened by mistake here or at another location.” Maj. Op. at 1207 (citation omitted). The opinion leaves out the other parts of the prison’s response, which note that the staff member in charge initially responded “[w]e would have marked opened in error if we had opened it” and the “mail room supervisor ... indicated they did not open the offenders [sic] legal mail and if this would have occurred they would have indicated this on the envelope.” In the second incident, the prison admitted that Hayes’s mail was opened in error. The prison also said that the mail was not read.
These allegations, by themselves, are not sufficient to state a cause of action under § 1983. In the end, however, I join the majority in concluding that Hayes has said enough at this stage of the proceedings to allege a constitutional tort. As the majority explains, Hayes pled that Defendant Cluney, the Deputy Warden of Virtual Prisons at the Idaho Department of Correction (IDOC), “has not stopped his subordinates from creating a ‘policy or custom’ ” of “illegally opening inmates clearly marked legal mail outside the presence of the inmate,” and that mail room supervisor Lisa Burke “continues to implement these ‘illegal’ policies and customs.” Hayes also states in his filings that this *1219 practice is particularly prevalent for “inmates who are charged with sex offenses.” Although IDOC’s official policy complies with the requirements of today’s holding, outling that for incoming legal mail, “[a] unit staff member will open and inspect the envelope in the presence of the inmate but will not read it,” Idaho Dep’t. of Corr., Standard Operating Procedure, Mail Handling in Correctional Facilities, Control Number £02.02.01.011, https://www. idoc.idaho.gov/content/policy/588, at 9, 12, that written policy alone is insufficient if prison staff are intentionally violating that policy for sex offenders. Showing a “blatant disregard for established regulations” is sufficient to raise an inference of intentional conduct to survive a motion to dismiss. Lavado, 992 F.2d at 611.
At this stage in the litigation, we must accept all allegations of material fact as true and construe them in the light most favorable to the. plaintiff. Nordstrom, 762 F.3d at 908. Construing Hayes’s pro se complaint liberally, I conclude that Hayes has sufficiently claimed that someone is intentionally, rather than merely accidentally, opening his legal mail in violation of his First Amendment rights. He may or may not be able to prove his claim, but he has said just enough to get thé opportunity.
On that basis, I concur in the judgment.

. Portions of this concurrence are identical to portions of my concurrence in the companion case, Mangiaracina v. Penzone, No. 14-15271, 849 F.3d 1191, 2017 WL 836070 (9th Cir. 2017). This case addresses the First Amendment right to be present when legal mail is inspected by prison guards; Mangiaracina addresses the Sixth Amendment right to be present. The principles are nearly the same, and my concerns are the same.

. On remand, the majority will allow the State to offer a “legitimate penological reason” for opening Hayes's legal mail. Maj. Op. at 1213. However, the test created in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987), was directed at prison regulations. Id. at 89, 107 S.Ct 2254. I am not sure how the test even applies to inadvertent conduct. What penological reason can the State offer if someone opened the letter by mistake? The opinion thus strongly suggests that mistake or inadvertence is not a “legitimate penological reason.” If so, Hayes’s claim nearly sounds in strict liability.