Concurrence by Judge BYBEE
OPINION
PAEZ, Circuit Judge:
Michael T. Hayes appeals the dismissal of his First Amendment challenge to prison officials opening his legal mail outside his presence. Hayes’s complaint alleged four instances of prison employees delivering legal mail addressed to Hayes that had been opened before delivery. The complaint also alleged that the prison and prison officials maintained a policy or custom of ignoring the improper handling of legal mail. The district court dismissed the complaint at the pre-screening stage pursuant to 28 U.S.C. § 1915A. On appeal, Hayes argues that the district court erred in dismissing his First Amendment claims against Defendant Lisa Burke, a mail room supervisor, and his policy-based claims against Defendants Shannon Clu-ney, Idaho Department of Corrections (“IDOC”), and Idaho Correctional Center (“ICC”). See Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.
I.
At all times relevant to this appeal, Hayes was housed at ICC, a privately run IDOC facility. Hayes alleges in his Second Amended Complaint, the operative complaint, that ICC mail room staff illegally opens inmates’ legal mail, “especially in *1207 mates who are charged with sex offences [sic].” He alleges that Defendant Burke improperly opened Hayes’s legal mail outside his presence on four occasions.[1]
On December 28, 2010, Hayes received a piece of mail that had already been opened. The envelope was “clearly marked as attorneys at law,” and the complaint identified the law firm that had sent the mail. Hayes filed a grievance regarding this incident, and the prison responded that “there was a piece of tape on the envelope but [prison officials] could not tell if it were [sic] sent through the mail this way or opened by mistake here or at another location.”[2]
On March 2, 2011,[3] Hayes received another piece of legal mail that had been opened before he received it. Hayes filed a grievance related to this incident, and the prison’s response stated: “This piece of mail was opened in error and not read.”
Hayes alleges that on June 2, 2011, another piece of “mail that was clearly marked as legal mail” was opened outside his presence. His complaint alleged that “this legal mail was sent ... through the prison’s regular mail systems” and “not through case managers or correctional counselors who always usually deliver legal mail to inmates.” The prison’s response to his grievance indicated that “[t]he item [prison staff] opened on June 2 was not from an attorney or from the courts, therefore it is not legal mail per [our] policy.”
Finally, on June 13, 2011, “legal mail was once again delivered to” Hayes which had been “opened before it was delivered.” Hayes attached a grievance form related to this incident. The response from the facility indicated that “[t]he item received on June 13 was from the US Courts and logged opened in error. This issue has been discussed with staff.”
The complaint identified Hayes’s cell mates at the time of the incidents as eyewitnesses, and Hayes attached a supporting affidavit from Robert Lavin, his cell mate during two of the incidents. Hayes also alleged that “a lot of correspondence that qualified as constitutionally protected legal mail [had been] illegally opened by ICC mail room staff.” Hayes explained that Defendant Cluney, the Deputy Warden of Virtual Prisons at IDOC, “has not stopped his subordinates from creating a ‘policy or custom’ ” of illegally opening legal mail. Hayes described this policy as “longstanding pervasive and weli documented.” He also identified five attorneys who had sent mail to Hayes that had been illegally opened over the years. Hayes did not allege that any of the legal mail that had been opened was related to a criminal matter; rather, the mail appears to have been related to civil matters.
On September 13, 2011, Hayes filed a complaint pursuant to 28 U.S.C. § 1983 in Idaho state court. Defendants removed the case to federal court. In its initial review order, the district court dismissed Hayes’s complaint with leave to amend. The court found that three of the claims of illegal mail opening had deficiencies that Hayes could attempt to cure in an amended complaint, and that the remaining incident (on March 2, 2011) “appealed] to be an isolated incident” insufficient to state a constitutional claim. After Hayes filed a Second Amended Complaint,[4] the district court *1208 dismissed the complaint with prejudice. The court explained that the complaint did not identify the sender of the June 2, 2011 or June 13, 2011 mail, and the grievance response for the June 13, 2011 mail indicated that it was from the United States courts rather than from an attorney. With respect to the December 28, 2010 incident and the March 2, 2011 incident, the court found that Hayes had pled sufficient facts to allege improper mail opening but that these were isolated incidents insufficient to state a constitutional claim against Defendant Burke. The court also dismissed Hayes’s Monell policy or custom claims against Defendants Cluney, IDOC, and ICC because Hayes had simply repeated the claims set forth in the original complaint, which the court had dismissed as insufficient in its initial review order. Hayes timely appealed.
II.
We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review de novo a district court’s dismissal for failure to state a claim under 28 U.S.C. § 1915A. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). “Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (internal quotation marks omitted).
III.
A.
Hayes argues that the First Amendment protects his right to be present when his civil legal mail is opened. We agree.
In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court addressed a challenge to a rule that allowed prison guards to open all legal mail, but only in the presence of the prisoner to whom the mail was addressed. The Court held that the rule was permissible because “the inmate’s presence insures that prison officials will not read the mail,” and therefore would not “chill [attorney-client] communications.” Id. at 577, 94 S.Ct. 2963 (emphasis added). The Court noted, however, that “the constitutional status of the rights asserted ... is far from clear,” id. at 575, 94 S.Ct. 2963, and the Court did not define the source or scope of these rights since it concluded that the inmate’s presence adequately protected any rights at stake. After Wolff, the Supreme Court clarified that a regulation that burdens prisoners’ constitutional rights is “valid if it is reasonably related to legitimate penological interests.” Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In Thornburgh v. Abbott, 490 U.S. 401, 413-14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the Court explained that the Turner test applies to restrictions on incoming mail to prisoners.
In Nordstrom v. Ryan, we recently held that a single instance of a guard reading a prisoner’s mail was sufficient to establish a violation of the Sixth Amendment right to counsel.[5] 762 F.3d 903. We recognized that *1209 Nordstrom’s allegation “that his right to privately confer with counsel has been chilled” represented “a plausible consequence of the intentional reading of his confidential legal mail.” Id. at 911; see also Casey v. Lewis, 43 F.3d 1261, 1269 (9th Cir. 1994) (noting in the context of an access-to-courts claim that “legal mail may not be read nor copied without the permission of the inmate”), rev’d on other grounds, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In Mangiaracina v. Penzone, No. 14-15271, 849 F.3d 1191, 2017 WL 836070 (9th Cir. Mar. 3, 2017), filed concurrently with this opinion, we held that the Sixth Amendment, in addition to prohibiting guards from reading prisoner legal mail, also protects the right of a prisoner to be present while legal mail relating to criminal proceedings is opened.
In both Nordstrom and Mangiaracina, we declined to analyze the plaintiffs’ claims under any constitutional provisions besides the Sixth Amendment, since the claims related to correspondence about criminal matters and therefore fell squarely within the scope of that Amendment. Mangiaracina, 849 F.3d at 1195; Nordstrom, 762 F.3d at 909. We recognized in Nordstrom, however, that other courts have “analyzed claims regarding the confidentiality of attorney-inmate communications under various constitutional principles, including the First Amendment right to freedom of speech and the Fourteenth Amendment rights to due process and access to the courts, or some combination of these rights.” 762 F.3d at 909.[6]
The Supreme Court has recognized that prisoner correspondence at least implicates First Amendment rights. In Procunier v. Martinez, 416 U.S. 396, 408, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh, 490 U.S. 401, 109 S.Ct. 1874, the Court held that censorship of correspondence between inmates and those outside of prison impermissibly burdened the First Amendment free speech rights of the non-prisoners, regardless of whether the inmates’ rights were implicated. Later, in Turner, 482 U.S. at 84-91, 107 S.Ct. 2254, the Court recognized that a statewide rule barring prisoner-to-prisoner correspondence across penal institutions implicated prisoners’ First Amendment rights. We have also recognized the First Amendment rights of prisoners to “send and receive mail,” Witherow v. Faff, 52 F.3d 264, 265 (9th Cir. 1995), though we have not yet addressed prisoners’ First Amendment right to have legal mail opened in their presence.
Relying in part on Procunier and Turner, several of our sister circuits have held that opening legal mail outside the presence of the addressee inmate burdens First Amendment rights. The Third Circuit has reasoned that a state policy or custom of
opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate’s right to freedom of speech. The practice deprives the expression of confidentiality and chills the inmates’ protected expression, regard *1210 less of the state’s good-faith protestations that it does not, and will not, read the content of the communications. This is so because the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed.
Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) (internal quotation marks and alterations omitted). The Eleventh Circuit has observed that “given their incarceration and often distance from their attorneys, prisoners’ use of the mail to communicate with their attorneys about their criminal cases may frequently be a more important free speech right than the use of their tongues.” Al-Amin v. Smith, 511 F.3d 1317, 1333-34 (11th Cir. 2008). In addition to the Third and Eleventh Circuits, the Second, Sixth, and Tenth Circuits have recognized that the opening of legal mail outside of a prisoner’s presence implicates First Amendment rights. See Merriweather v. Zamora, 569 F.3d 307, 317 (6th Cir. 2009) (“[W]e have held that improperly opening a prisoner’s mail does implicate at least the First Amendment.”); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (explaining that “a prisoner’s right to the free flow of incoming and outgoing mail is protected by the First Amendment” and that “a prisoner has a right to be present when his legal mail is opened,” but noting that “an isolated incident of mail tampering is usually insufficient to establish a constitutional violation”); Ramos v. Lamm, 639 F.2d 559, 582 (10th Cir. 1980) (holding that, at least where the prison offered no justification for opening prisoners’ mail to attorneys outside their presence, this practice was “invalid under the First and Fourteenth Amendments”), abrogated in part on other grounds by Thornburgh, 490 U.S. 401, 109 S.Ct. 1874.
The reasoning of these decisions by our sister circuits is persuasive. When a prisoner receives confidential legal mail that has been opened and re-sealed, he may understandably be wary of engaging in future communication about privileged legal matters. Moreover, prisoners’ communications with civil attorneys often relate to lawsuits challenging the conditions of confinement in the prison or wrongful conduct of prison employees. When prison officials open legal mail, prisoners may justifiably be concerned about retaliation from the very officers the prisoner has accused of wrongdoing. Prisoners may also worry that the contents of the letters could be passed along to the facility’s lawyers, who would learn of the prisoner’s legal strategy. See Gomez v. Vernon, 255 F.3d 1118, 1123-24 (9th Cir. 2001).
To make matters worse, prisoners’ avenues of confidential communication with attorneys are limited. In Idaho, the current policy on telephones and electronic communications provides that “[ajttorney communications using email, digital photograph, and video messaging are not privileged, are archived and may be reviewed.” [7] Idaho Department of Corrections Standard Operating Procedure, Telephones and Electronic Communications: Inmate, Control No. 503.02.01.001, available at https://www.idoc.idaho.gov/ content/policy/3743, at 7. “Voice messages left by an attorney for an offender are not privileged and are recorded and can be monitored.” Id.' at 6. Beyond these regulatory barriers, legal representation is by nature a document-heavy enterprise, and the contents of documents cannot al *1211 ways be communicated by phone and should not always be communicated in a non-privileged email. In addition, some prisoners are represented by counsel from a different part of the state or from out of state, making in-person visits costly and time consuming. Hayes, for example, was incarcerated in Boise but was represented in this appeal by a Seattle-based attorney. These factors, present in Idaho and elsewhere, highlight the immense undertaking — for both attorney and chent — of litigating from prison, and the importance of confidential legal mail in making that undertaking feasible.
As we have previously observed, “[i]t takes no stretch of imagination to see how an inmate would be reluctant to confide in his lawyer about the facts of the crime, perhaps other crimes, possible plea bargains, and the intimate details of his own life and his family members’ lives, if he knows that a guard is going to be privy to them, too.” Nordstrom, 762 F.3d at 910. Because “the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed,” Jones, 461 F.3d at 359 (quoting Bieregu v. Reno, 59 F.3d 1445, 1456 (3d Cir. 1995)), a prisoner who receives legal mail that has been opened and re-sealed may be justifiably concerned about the confidentiality of his communications. We therefore agree with the conclusion of the Sixth Circuit that “[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim.” Merriweather, 569 F.3d at 318.
In sum, we recognize that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence.
B.
We turn to whether Hayes alleged facts sufficient to state a First Amendment claim. We hold that he has.
The district court properly dismissed two counts of alleged improper mail opening. For the incident that Hayes alleged occurred on June 2, 2011, the response from the facility indicated that the item was not legal mail. In his Second Amended Complaint, Hayes did not clarify who sent the mail or whether it was properly marked as “legal mail.” The district court therefore properly concluded that Hayes had not met his burden of plausibly alleging that the item opened outside his presence was protected legal mail. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The district court also properly dismissed Hayes’s claim with respect to the June 13, 2011 incident because the grievance response indicates that the mail was from the United States courts. “Mail from the courts, as contrasted to mail from a prisoner’s lawyer, is not legal mail.” Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). Accordingly, the First Amendment does not prohibit opening such mail outside the recipient’s presence.
The other two instances alleged by Hayes, however, do state a First Amendment claim. With' respect to the mail that Hayes received on December 28, 2010, Hayes alleged that the sender was a law firm. The facility’s response to Hayes’s grievance regarding the incident acknowledged that “there was a piece of tape on the envelope” but stated that prison officials “could not tell if it were [sic] sent through the mail this way or opened by mistake here or. at another location.” Hayes both identified the sender of the mail and plausibly alleged that it had been opened by a prison official outside his presence.
With respect to the mail that Hayes received on March 2, 2011, he similarly alleged that his legal mail had been opened outside his presence. The facility’s re *1212 sponse to his grievance stated: “This piece of mail was opened in error and not read.” Prison officials then confirmed that they had opened the piece of legal mail that Hayes received on March 2, 2011 outside his presence.
The district court held that because the December 28, 2010 incident and the March 2, 2011 incident were isolated interferences with Hayes’s mail, Hayes could not proceed on his First Amendment claim against Defendant Burke. But a plaintiff need not allege a longstanding practice of violating his First Amendment rights in order to state a claim for relief on a direct liability theory. In Sallier v. Brooks, 343 F.3d 868, 879 (6th Cir. 2003), the Sixth Circuit upheld a jury’s award of punitive and compensatory damages against two prison mail room clerks for three counts of improper mail opening where, in all three instances, “the defendants listed the letters on the legal mail log as legal mail” and “simply failed to follow established procedures requiring [the plaintiffs] presence before the letters were opened.” The court held that “[s]uch a failure, after recognition of the letters as protected legal mail, is objectively unreasonable.” Id. at 880. Later, in Merriweather, 569 F.3d at 317, the Sixth Circuit concluded that “[t]he defendants’ admission that [prison] employees improperly opened four pieces of legal mail is ... enough alone to state a claim” (footnote omitted).
Defendants argue that Hayes has failed to allege anything beyond negligence. As noted above, however, Hayes has alleged that ICC mailroom staff illegally opened inmates’ legal mail, “especially inmates who are charged with sex offences [sic].” While Hayes does not allege that he was convicted of a sex offense, we take judicial notice of the fact that he was convicted of “lewd-and lascivious conduct” with a “minor under 16.”[8] IDOC Offender Search Details, Idaho Dep’t of Corrections (Nov. 10, 2016), available at https://www.idoc. idaho.gov/content/prisons/offender_search/ detail/20633. Reading Hayes’s pro se complaint generously, as we must, we therefore conclude that Hayes has alleged a plausible claim that his protected mail was arbitrarily or capriciously opened outside his presence on two separate occasions. Nothing further is required.
Nor is Hayes required to “show any actual injury beyond the free speech violation itself to state a constitutional claim.” Al-Amin, 511 F.3d at 1333.[9] Rather, the injury that Hayes alleges is “that his right to privately confer with counsel has been chilled.” Nordstrom, 762 F.3d at 911. This injury is sufficient to state a First Amendment claim. See Laird v. Tatum, 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (explaining that “constitutional violations may arise from the deterrent, or ‘chilling,’ effect of governmental [actions] that fall short of a direct prohibition against the exercise of First *1213 Amendment rights,” where “the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.”); cf. Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (holding, in the context of a First Amendment retaliation claim, that “the injury asserted is the retaliatory accusation’s chilling effect on Hines’ First Amendment rights.... Hines’ failure to demonstrate a more substantial injury does not nullify his retaliation claim.”).
Finally, we recognize that the fact that a prison’s actions “burden[ ] prisoners’ First Amendment rights does not, however, tell us whether, the policy [or practice] is constitutional. Prisoners necessarily sacrifice many of the constitutional rights available to non-incarcerated citizens.” Jones, 461 F.3d at 360. Instead, “[t]he relevant question, as articulated by the Supreme Court in Turner, is whether the legal mail policy is ‘reasonably related to legitimate penological interests.’ ” Id. (quoting Turner, 482 U.S. at 89, 107 S.Ct. 2254). Here, Defendants have not yet had the opportunity in district court to present evidence of a legitimate penological reason for opening Hayes’s mail outside his presence.
Thus, we conclude that Hayes has stated a First Amendment claim on the facts alleged, and the district court erred in dismissing this claim .at the pre-screening stage. See Merriweather, 569 F.3d at 318. On remand, Defendant Burke may offer a legitimate penological reason for opening Hayes’s legal mail at either summary judgment or trial.
IV.
Finally, Hayes waived any challenge to the dismissal of his policy-based claims. See Monell, 436 U.S. 658, 98 S.Ct. 2018. We “will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant’s opening brief.” Officers for Justice v. Civil Serv. Comm’n of City & Cty. of San Francisco, 979 F.2d 721, 726 (9th Cir. 1992) (citation omitted). Hayes’s opening brief does not discuss his Monell policy or custom claims against Defendants Cluney, IDOC, and ICC, nor does it cite any authority related to these claims. We therefore decline to address Hayes’s argument, raised for the first time in his reply brief, that the district court erred in dismissing his policy-based claims.
[[Image here]]
For the reasons set forth above, we reverse the district court’s dismissal of Hayes’s First Amendment claim against Defendant Burke and affirm the dismissal of the policy-based claims against the remaining defendants.
The judgment is AFFIRMED in part, REVERSED in part, and REMANDED.
The parties shall bear their own costs on appeal.

. We accept as true all allegations of material facts in the Second Amended Complaint, and we construe the facts in the light most favorable to the plaintiff. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014).

. Hayes attached the grievances he filed, as well as the facility’s responses, to the Second Amended Complaint.

. The grievance form indicates that the incident actually took place on March 1, 2011.

. Hayes filed a first amended complaint that was virtually identical to the original complaint, but he subsequently sought leave to file a second amended complaint, which the dis *1208 trict court granted. The court never formally reviewed the first amended complaint.

. We previously addressed prisoners’ legal mail rights in Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended on denial of reh’g by 135 F.3d 1318 (9th Cir. 1998), in which we held that mail from a court rather than a lawyer did not qualify as protected legal mail. We did not address prisoners’ rights with respect to clearly marked legal mail from a lawyer, and we explicitly declined to decide “whether mail clearly sent from a lawyer to an inmate but lacking the 'Legal Mail' designation may be opened outside the presence of the inmate.” Id. In Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989), a probation officer visiting a prisoner handed a *1209 piece of legal mail to a guard, who then opened the mail outside the prisoner's presence. We recognized that "the relevant event for purposes of analyzing [the defendant’s] culpability is the alleged constitutional injury, the guard's opening of the letter outside [the prisoner’s] presence” but concluded that the named defendant — the probation officer— could not be held liable.

. Because Hayes argued only that his confidential attorney-client communications are protected by the First Amendment, we do not address whether additional constitutional provisions also protect these communications.

. We take judicial notice of the IDOC’s Standard Operating Procedure, as it is “not subject to reasonable dispute” and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed. R. Evid. 201(b)(2); see United States v. Thornton, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of a federal Bureau of Prisons policy statement).

. We take judicial notice of the IDOC’s Offender Database, as it is "not subject to reasonable dispute” and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed. R. Evid. 201(b)(2).

. In Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that a group of prisoners challenging the adequacy of prison law libraries were required to show actual injury in order to mount a successful access-to-courts challenge. Both the Third and the Eleventh Circuits have held that "the actual injury requirement applies to access-to-courts claims but not to free speech claims.” Al-Amin v. Smith, 511 F.3d 1317, 1341 (11th Cir. 2008); see Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) ("We reject the argument ... that the Supreme Court's decision in Lewis v. Casey ... require[s] that the plaintiffs prove some injury-in-fact beyond the infringement of constitutionally protected speech.").