**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-7340

GRANT RUFFIN HAZE, III,

Plaintiff - Appellant,

v.

DONNIE HARRISON; MS. SCOTT; MS. FREDRICK; OFFICER HALL; SERGEANT CLARK; WAKE COUNTY SHERIFF DEPARTMENT,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, Chief District Judge.  (5:15-ct-03109-BO)

Submitted:  March 26, 2020                           Decided:  June 8, 2020

Before MOTZ, HARRIS, and QUATTLEBAUM, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Motz wrote the opinion, in which Judge Harris and Judge Quattlebaum joined.

Lawrence D. Rosenberg, JONES DAY, Washington, D.C., for Appellant.  Paul Gerard Gessner, Harold F. Askins, WAKE COUNTY SHERIFF'S OFFICE, Raleigh, North Carolina; Robert C. Montgomery, CAMPBELL UNIVERSITY SCHOOL OF LAW, Raleigh, North Carolina, for Appellees.

DIANA GRIBBON MOTZ, Circuit Judge:

While awaiting trial, Grant Haze was held at two state detention facilities in Wake County, North Carolina. Haze alleges that during this time, prison officials opened, copied, misdirected, and otherwise interfered with his mail to and from his lawyer. Proceeding *pro se*, Haze filed this § 1983 action against Wake County Sheriff Donnie Harrison, the Wake County Sheriff's Department, and officers and staff at the facilities, alleging violations of his First, Fourth, and Sixth Amendment rights.[1] The district court granted summary judgment to Defendants. Haze appeals. For the reasons set forth herein, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

From July 2011 to September 2013, Haze, a pretrial detainee, was held at the Wake County Public Safety Center and the Wake County Detention Center. The mail policy in force at those facilities requires officers to inspect all incoming mail for contraband. Special rules apply to legal mail, which officers are to inspect in the inmate's presence. Officers are instructed not to read an inmate's legal mail.

Certain law enforcement officers and lawyers at the District Attorney's office may request that inmates be placed on the "Jail Mail Watch List." When an inmate is on the Jail Mail Watch List, staff at the facilities send copies of the inmate's incoming and

---

[1] Haze also alleged civil conspiracy and violations of his right to due process, but on appeal his attorneys do not contend the district court erred in granting summary judgment with respect to those claims.

outgoing non-legal mail to the Wake County Sheriff's Office, which in turn forwards the mail to the party requesting it. However, staff at the facilities are trained not to open or copy an inmate's legal mail.

Haze alleges that prison officials improperly interfered with his legal mail on at least fifteen occasions. According to Haze, on seven occasions prison officials opened and copied his outgoing legal mail and forwarded it to the District Attorney's office. All but one of these letters were labeled "legal mail." On five occasions, officials never delivered Haze's incoming legal mail or sent Haze's outgoing legal mail. And on three occasions, officials either read Haze's incoming legal mail or opened it outside of his presence.[2]

Haze filed contemporaneous grievances with corrections officials regarding the interference with his legal mail. Haze claims that when he informed a prison officer that this interference violated his constitutional rights, the officer responded: "Sue me."

Haze then brought this action against Defendants under 42 U.S.C. § 1983. Haze contends that Defendants' interference with his legal mail violated, *inter alia*, his First Amendment rights to free speech and access to the courts, his Fourth Amendment right to be free from unreasonable searches and seizures, and his Sixth Amendment right to the effective assistance of counsel.

---

[2] Although Defendants contest Haze's characterization of some of these incidents, we need not resolve this conflict. *See TFWS, Inc. v. Schaefer*, 325 F.3d 234, 241 (4th Cir. 2003) (summary judgment is not an appropriate vehicle to "resolve conflicts in the evidence"). Instead, the question on summary judgment is whether the movant is entitled to judgment as a matter of law based on facts as to which "there is no genuine dispute." Fed. R. Civ. P. 56(a).

The district court granted summary judgment to Defendants. With respect to the First Amendment free speech claim, the court held that prison officials had acted only negligently, precluding liability under § 1983. The court concluded that Haze had failed to show an actual injury to his ability to pursue legal claims, foreclosing his First Amendment access-to-the-courts claim. Finally, the court held that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred the Fourth and Sixth Amendment claims. Haze timely appealed.

A district court may grant summary judgment only if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party,' and '[a] fact is material if it might affect the outcome of the suit under the governing law.'" *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration in original) (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015)). Although we draw all justifiable inferences in favor of the non-movant (here, Haze), we "must accord deference to the views of prison authorities" regarding "disputed matters of professional judgment." *Beard v. Banks*, 548 U.S. 521, 529–30 (2006).

With the facts and standard of review in mind, we turn to Haze's claims.

## II.

Haze's principal contention is that Defendants violated his First Amendment right to free speech. The First Amendment, as incorporated through the Fourteenth Amendment,

4

prohibits states from "abridging the freedom of speech." U.S. Const. amend. I. This proscription extends to both government regulations that directly burden speech and those that have indirect chilling effects. *See Washington Post v. McManus*, 944 F.3d 506, 516–17 (4th Cir. 2019).

Opening an incarcerated person's legal mail outside of his presence can chill protected speech. As the Third Circuit has explained, this practice "strips those protected communications of their confidentiality," inhibiting the incarcerated person's "ability to speak, protest, and complain openly, directly, and without reservation with the court." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (internal quotation marks omitted); *see also Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) ("When a prisoner receives confidential legal mail that has been opened and re-sealed, he may understandably be wary of engaging in future communication about privileged legal matters."); *cf. Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) (prison's legal mail policy did not chill protected speech where it required such mail to be opened in the presence of the inmate, thus "insur[ing] that prison officials will not read the mail").

Although incarcerated persons do not "shed [their] first amendment rights at the prison portals," *Brown v. Peyton*, 437 F.2d 1228, 1230 (4th Cir. 1971), courts generally accord deference to the day-to-day judgments of prison officials, *see Turner v. Safley*, 482 U.S. 78, 89 (1987). Accordingly, as the Supreme Court has explained, even if a prison's policy or practice impinges upon constitutional rights, it remains "valid if it is reasonably related to legitimate penological interests." *Id.* To determine whether this is so, courts

5

apply the *Turner* Court's test, which governs the claims of both convicted prisoners and pretrial detainees like Haze. *See Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993).

The *Turner* test requires assessment of four factors:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives.

*Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019) (internal quotation marks omitted). Although courts accord deference to the judgments of prison administrators, this deference is not limitless. "When neither common sense nor evidence demonstrates a reasonable causal nexus" between a prison administrator's ends and chosen means, "summary judgment for the defendant administrator is inappropriate." *Jones*, 461 F.3d at 361.

With respect to the first *Turner* factor, Defendants contend that they acted reasonably in opening Haze's legal mail outside of his presence because of potential security risks. Haze had received contraband — internet printouts of cars, phones, and vacation homes — through *non-legal* mail; prison officials suspected that Haze had also received contraband through legal mail.

The argument fails. To be sure, Haze's receipt of the prohibited materials justifies the opening of his legal mail to check for the presence of contraband. But Defendants do

6

not explain, as they must, why they did so *outside of Haze's presence*.[3] Because no reasonable causal nexus has been shown between Defendants' ends and chosen means, the first *Turner* factor weighs in favor of Haze.

The remaining *Turner* factors, which Defendants do not address in their brief, also militate in favor of Haze. There are few alternative means to assure incarcerated persons that they may freely communicate with counsel — given the nature of incarceration, "prisoners' avenues of confidential communication with attorneys are limited." *Hayes*, 849 F.3d at 1210. Opening legal mail in an inmate's presence would have little "impact . . . on guards and other inmates, and on the allocation of prison resources generally," *Turner*, 482 U.S. at 90 — indeed, Defendants' own policy requires officers to do so. *Cf. Al-Amin v. Smith*, 511 F.3d 1317, 1331 (11th Cir. 2008) ("[T]here is no showing that opening attorney mail in an inmate's presence burdens guards, prisoners, or the allocation of prison resources; as noted above, DOC policy already requires opening attorney mail in an inmate's presence."). And there is a "ready alternative[]" to the challenged practice, *Turner*, 482 U.S. at 90: "opening an inmate's attorney mail in his presence itself is the

---

[3] On appeal, Defendants suggest that officer safety could be jeopardized when mail containing contraband is opened in an inmate's presence. This argument is conclusory — Defendants do not explain how this rationale would apply to outgoing mail; nor do they contend that mail at the facilities is opened within an inmate's reach. In any event, Defendants forfeited the argument by failing to raise it in the district court. *See United States v. Turner Constr. Co.*, 946 F.3d 201, 208 (4th Cir. 2019). Moreover, because the record does not reflect that this was the actual reason Defendants opened Haze's legal mail outside of his presence, summary judgment would be inappropriate. *See Salahuddin v. Goord*, 467 F.3d 263, 277 (2d Cir. 2006); *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

7

easy alternative; it 'fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests,'" *Al-Amin*, 511 F.3d at 1331 (quoting *Turner*, 482 U.S. at 91).

Defendants advance several arguments in an attempt to evade this conclusion. First, they argue that their actions were, at most, negligent, foreclosing liability on this claim under § 1983. *See Morrash v. Strobel*, 842 F.2d 64, 67 (4th Cir. 1987). But Haze alleges fifteen instances of interference with his legal mail, in contravention of Defendants' own policy, despite his complaints and written grievances. Indeed, Haze contends that when he complained that his constitutional rights were being violated, a prison officer responded: "Sue me." Drawing all reasonable inferences in favor of Haze, a jury reasonably could find that Defendants' conduct was not negligent, but rather constituted a deliberate pattern or practice. *See Hayes*, 849 F.3d at 1216, 1219 (Bybee, J., concurring in the judgment) (prison officials' intentional conduct may be inferred from a pattern and practice of improperly opening legal mail or disregard for established regulations); *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995) (holding that jury could reasonably find a pattern or practice where the plaintiff alleged fifteen instances of his legal mail being opened and documented five instances), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

Next, Defendants contend that Haze has not shown that he was injured by the opening of his legal mail. In doing so they fail to recognize that the infringement of Haze's First Amendment rights *itself* constitutes an injury. *See Jones*, 461 F.3d at 359–60 ("Unlike the provision of legal libraries or legal services, which are not constitutional 'ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present

8

claimed violations of fundamental constitutional rights to the courts,' protection of an inmate's freedom to engage in protected communications is a constitutional end in itself." (citation omitted) (quoting *Lewis*, 518 U.S. at 351)); *Al-Amin*, 511 F.3d at 1334 ("We also agree . . . that the actual injury requirement applies to access-to-courts claims but not to free speech claims.").

Finally, Defendants maintain that qualified immunity protects them from liability on this claim. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Defendants argue that courts had not clearly established, at the time of the alleged constitutional violations, that legal mail must be opened in an inmate's presence. This directly contradicts Defendants' qualified immunity argument in the district court. There, Defendants contended that "[t]he only *established* law is that general mail may be opened and inspected outside of the presence of the inmate. 'Legal Mail' may be opened and inspected for contraband, but in the presence of the inmate." *See* Defs.' Mem. Supp. Summ. J. 26, ECF

No. 104.  Accordingly, Defendants have forfeited the argument on appeal.  *See United States v. Turner Constr. Co.*, 946 F.3d 201, 208 (4th Cir. 2019).[4]

III.

Haze also maintains that in opening his legal mail outside of his presence, prison officials violated his Fourth Amendment rights.  The Fourth Amendment, as incorporated through the Fourteenth Amendment, prohibits state actors from conducting "unreasonable searches and seizures."  U.S. Const. amend. IV.  "A government agent's search is unreasonable when it infringes on an expectation of privacy that society is prepared to consider reasonable."  *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013) (internal quotation marks omitted).

The fact that legal mail is widely recognized to be privileged and confidential — even in the context of prisons — suggests that an incarcerated person's expectation of privacy in his legal mail is one "that society is prepared to consider reasonable."  *See id.* (internal quotation marks omitted); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.

---

[4] Moreover, we note that in the absence of binding authority clearly establishing a right, "we may look to 'a consensus of cases of persuasive authority' from *other jurisdictions." See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017) (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)).  Such a consensus seems to exist here, foreclosing this qualified immunity defense.  *See Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009); *Al-Amin*, 511 F.3d at 1330–31; *Jones*, 461 F.3d at 359; *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981); *Ramos v. Lamm*, 639 F.2d 559, 582 (10th Cir. 1980); *see also Hayes*, 849 F.3d at 1211; *Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001); *McWilliams v. Schoeneman*, 124 F.3d 217, 1997 WL 525492, at *3 (10th Cir. Aug. 11, 1997) (unpublished table decision).  *But see Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993).

2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail . . . ."). And although the Supreme Court held in *Hudson v. Palmer*, 468 U.S. 517 (1984), that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *id.* at 526, "nothing in *Hudson* indicates the Supreme Court intended to abrogate a prisoner's expectation of privacy *beyond* his cell," *King v. Rubenstein*, 825 F.3d 206, 215 (4th Cir. 2016) (emphasis added) (internal quotation marks omitted).

Nevertheless, Defendants are entitled to qualified immunity with respect to Haze's Fourth Amendment claim. Neither we nor the Supreme Court has previously considered the question of whether incarcerated persons have a reasonable expectation of privacy in their legal mail. Nor is there a consensus of persuasive authority on the matter — indeed, neither party identifies a single case, in any Circuit, where interference with an incarcerated person's legal mail was held to be violative of the Fourth Amendment. Consequently, Defendants have met their burden to show that their actions did not violate clearly established law for purposes of Haze's Fourth Amendment claim.

IV.

Finally, Haze contends that Defendants' interference with his legal mail hindered his criminal defense, violating his First Amendment right of access to the courts and his Sixth Amendment right to the effective assistance of counsel. Haze has forfeited these arguments by failing to raise them in his informal brief. *See Jackson v. Lightsey*, 775 F.3d

11

170, 177 (4th Cir. 2014); *United States v. Hairston*, 754 F.3d 258, 260 n.3 (4th Cir. 2014). Accordingly, we need not decide whether *Heck v. Humphrey* bars these claims. *See Heck*, 512 U.S. at 486–87 (holding that § 1983 claims are barred where recovery would imply the invalidity of plaintiff's criminal conviction if that conviction has not yet been invalidated).

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*