**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-6278

AJANAKU E. MURDOCK

　　　　　Plaintiff - Appellant,

　　　v.

CHRISTINA THOMPSON, Former Sergeant / Legal Mail Carrier, formerly known as FNU Thompson; DONNA MCALLISTER, Richmond Unit Secretary, formerly known as FNU McAllister; WESLEY MABRY, Administrative Assistant, formerly known as FNU Mabry; DONNA HOUSER, Mailroom Employee, formerly known as FNU Houser; ELIZABETH T. PAUL, Mailroom Employee, formerly known as E. Paul,

　　　　　Defendants - Appellees.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:18-cv-00020-FDW)

Submitted:  September 9, 2022　　　　　　　　　Decided:  December 1, 2022

Before NIEMEYER and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Gregory J. DuBoff, Matthew A. Fitzgerald, Appellate Justice Initiative, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant.  Joshua H. Stein, Attorney General, Nicholas S. Brod, Assistant Solicitor General, Norlan Graves, Special Deputy

Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ajanaku Murdock was a prisoner incarcerated at the Lanesboro Correctional Institution (Lanesboro), a state prison in Polkton, North Carolina. Proceeding *pro se*, Murdock filed a civil rights suit under 42 U.S.C. § 1983 against Lanesboro officials Christina Thompson, a mailroom processing assistant and former sergeant; Donna McAllister, an administrative associate; Wesley Mabry, an administrative assistant and facility head designee; and Donna Houser and Elizabeth T. Paul, both mailroom processing assistants (collectively, Defendants). As relevant here, Murdock alleged that Defendants violated his right of access to the courts by prohibiting him from sending a "Motion for a Speedy Trial" by certified mail (the access claim). J.A. 5. He also alleged that Lanesboro's mail policies violated his First Amendment right to send and receive mail (the First Amendment claim).[1]

The district court first screened Murdock's complaint pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2)(B)(ii), and dismissed the access claim. After discovery, it granted Defendants summary judgment on the First Amendment claim. Murdock appealed *pro se* and moved for the appointment of counsel, which this Court

---

[1] Murdock raised several other variations of his First Amendment claim in his informal brief, alleging that certain Defendants interfered with his right to receive and send mail. His court-appointed counsel declined to brief those claims on the ground that they lack merit. "[W]e treat a formal brief by appointed counsel as controlling unless ignoring an issue raised by a pro se appellant's informal brief would result in 'grave injustice.'" *Chin-Young v. United States*, 774 F. App'x 106, 115 n.4 (4th Cir. 2019) (citing *Slezak v. Evatt*, 21 F.3d 590, 593 n.2 (4th Cir. 1994)). We perceive no "grave injustice" in addressing only those issues that Murdock's counsel briefed, and, as such, treat the counseled brief as controlling. *Id.*

3

granted.  We now address two issues: (1) the district court's screening-stage dismissal of the access claim and (2) its grant of summary judgment to Defendants on the First Amendment claim.  For the reasons that follow, we affirm.

I.

A.

We begin with the facts related to the access claim.  From September 2013 to November 2018, Murdock was an inmate at Lanesboro, following his conviction on state charges.  From 2014 to 2015, Murdock was indigent.  He was not indigent from 2015 through at least 2016.

In 2014, while incarcerated, Murdock faced new pending state charges in Iredell County, North Carolina.  According to Murdock's complaint, around February 2014, he attempted to file with "the Court" what he characterized as a "Motion for a Speedy Trial" regarding his pending charges. [2]  J.A. 5.  He did not describe the document's contents.  His complaint did not indicate the court to which Murdock intended to send the motion and the charges to which the motion was related.  In its screening order, the district court deemed the document "a *pro se* motion for speedy trial" related to a "criminal case."  J.A. 22–23.  On appeal, Murdock's counsel clarify that he sought to make a speedy-trial request or demand under North Carolina law, which Defendants do not contest. [3]

---

[2] Murdock alleged that he attempted to file his request with "the Court." J.A. 5.  We presume that he meant the clerk of court where his charges were pending, as section 15A-711(c) requires.

[3] Consistent with Murdock's counseled brief, we characterize the document at issue

4

Two North Carolina statutes address inmate speedy-trial demands. The record does not indicate the provision upon which Murdock based his. The first statute provides that an inmate subject to a detainer "shall be brought to trial within eight months after he shall have caused to be sent . . . , by registered mail, written notice of his place of confinement and request for a final disposition of the criminal charge against him." N.C. Gen. Stat. § 15-10.2(a). A detainer allows an inmate in the North Carolina state prison system to "be held to account for any other charge pending against him" by a court order directing the inmate "to answer the charge pending in such court." § 15-10.1.

The second statute provides that an inmate who has pending charges but is not subject to a detainer "may, by written request filed with the clerk of the court where the other charges are pending, require the prosecutor prosecuting such charges to proceed." § 15A-711(c). A copy of the request must be served on the prosecutor in compliance with North Carolina Rule of Civil Procedure 5(b). *Id.* Once an inmate files his request with the clerk, the prosecutor has six months to ask the custodian of the inmate's prison to temporarily release the inmate for trial on the pending charges. § 15A-711(a), (c). If the prosecutor fails to do so, the pending charges must be dismissed. § 15A-711(c). An inmate must prove that his speedy-trial request was properly filed and served for his charges to be dismissed pursuant to this statute. *North Carolina v. Armistead*, 807 S.E.2d 664, 672 (N.C. Ct. App. 2017).

---

as a speedy-trial "demand" or "request" for purposes of this factual background. We discuss the implications of the lack of clarity surrounding the precise nature of Murdock's "Motion for Speedy Trial" below. J.A. 5.

Murdock informed Defendants that he believed that he needed to send his request via certified or registered mail.[4] However, he alleged, he learned that Lanesboro would not pay for certified mail because of his indigent status.[5] In response, Murdock filed an internal grievance in which he explained that the courts would not accept mail that was not registered or certified. Murdock then sent his request by first-class mail. He alleged that because he sent the demand through first-class mail, "the Court didn't/couldn't honor [his] speedy trial motions," and he "was forced to plea [sic] out." J.A. 6. Approximately one year after this incident, Murdock pled guilty to the pending charges and received a 20 to 33-month "consecutive sentence." J.A. 6.[6]

---

[4] First-class mail receives "expeditious handling and transportation" for a small fee. U.S. Postal Service, *Mailing Standards of the United States Postal Service: Domestic Mail Manual* § 130.2.1 & Price List (Notice 123), https://pe.usps.com/DMM300. Certified mail provides senders with additional security. *Id.* § 500.3.1.1. The Postal Service gives a sender a "mailing receipt" to show that the item was deposited in the mail. *Id.* § 500.3.1.1. The sender can also purchase a "return receipt" to confirm delivery. *Id.* Certified mail costs more than first-class mail, and it requires more documentation and processing by Postal Service employees. *Id.* § 500.3.2.1, Price List (Notice 123). Registered mail provides further protection. It uses "a system of receipts to monitor the movement of the mail from the point of acceptance to delivery." *Id.* § 500.2.1.1. Registered mail costs more than certified mail and has similar documentation and processing requirements. *Id.* § 500.2.1.2, Price List (Notice 123).

[5] Murdock's complaint does not mention the availability of registered mail at Lanesboro.

[6] Murdock neither alleges the charges to which he pleaded guilty nor the sentence to which the 20–33 sentence ran consecutively. According to the North Carolina Department of Public Safety, it appears that the relevant convictions were intimidating a witness and possession of a Schedule II drug. *Offender Public Information*, N.C. Dep't of Pub. Safety (enter "Murdock" in the "Last Name" box and "Ajanaku" in "First Name" box, click search, and click the hyperlink for "Offender Number 0634508"). Murdock was convicted of these charges in January 2015. The minimum sentence for these convictions was one year and eight months, and the maximum was two years and nine months. *Id.*

6

B.

We next turn to the facts relevant to the First Amendment claim. Lanesboro maintained different policies for indigent and non-indigent prisoners' mail. The indigent-mail policy limited inmates' personal mail to "the cost of 10 first-class one ounce letters per month." J.A. 74. The cost of postage for personal mail was covered by the Inmate Welfare Fund. No written policy addressed certified and registered mail, but Thompson informed Murdock that Lanesboro would not pay for indigent inmates to send legal mail via certified mail without a "letter from the court" stating that certified mail was required. J.A. 378. Indigent inmates were free to send unlimited legal mail by first-class mail, however. First-class postage for indigent legal mail was "paid from the Inmate Welfare Fund." J.A. 75. If needed, the prison processed outgoing indigent legal mail as first-class "packages" to ensure that the mail had enough postage. J.A. 68.

As for the non-indigent mail policy, before 2016, inmates could pay to send any piece of mail by first-class, certified, or registered mail. By 2015, Murdock was no longer indigent, and he used certified mail regularly for both legal and personal matters. In April 2016, Mabry reevaluated the non-indigent mail policy and decided to limit non-indigent inmates to sending only legal mail via certified and registered mail. Non-indigent inmates could still use first-class mail for personal mail. Mabry based this decision on the time-

---

This sentence was to run consecutively to his sentences that he was then serving. *Id.*

7

consuming procedures used by the U.S. Postal Service and Lanesboro's mailroom staff to process certified and registered mail.

C.

On January 11, 2018, Murdock filed a verified *pro se* complaint, raising several claims under § 1983. Murdock first alleged that when Defendants prevented him from using certified mail to send his speedy-trial demand, they violated his right of access to the courts. The second alleged that Lanesboro's policies regarding certified and registered mail violated his First Amendment right to send and receive mail while incarcerated.

The district court first screened Murdock's *pro se* complaint under the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2)(B)(ii). In doing so, it dismissed the access claim, concluding that Murdock failed to "explain why his alleged inability to file a *pro se* motion for speedy trial forced him to plead guilty and receive a consecutive sentence." J.A. 23. Additionally, the court reasoned that the claim "directly challenge[d] the validity of [his] guilty plea," and for that reason, was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). J.A. 22–23. The court permitted the First Amendment claim to proceed past this initial review.

After discovery, Defendants moved for summary judgment on the First Amendment claim, which the district court granted. The court reasoned that Defendants had adopted the indigent mail policy to save prison resources—a legitimate penological objective—and that Murdock could use first-class mail as an alternative means of exercising his First Amendment rights. It further explained that prison staff informed Murdock that he could

8

request an exception to the prohibition on certified mail if he could show that a court order required him to use certified or registered mail, but Murdock did not present any evidence of such an order. As for the non-indigent mail policy, the court found that Defendants demonstrated that their limitations on certified and registered mail were reasonable "due to undue burdens on the mailroom and staff," which Murdock failed to refute. J.A. 476.

Murdock then appealed the district court's screening and summary judgment orders *pro se* and moved for this Court to appoint counsel. The Court granted his motion. Once Murdock's attorneys were appointed, the Court instructed them to brief the issue of "[w]hether the district court properly awarded summary judgment to defendants on plaintiff's First Amendment claims related to his incoming and outgoing mail," as well as any other questions that they deemed meritorious. Confirmation of Assignment of Counsel 1, ECF No. 15. Murdock's counsel briefed the access claim, as well as the summary judgment decision as it applied to Lanesboro's mail policies.

## II.

This Court reviews section 1915(e)(2)(B)(ii) screening dismissals in the same way that we review dismissal under Federal Rule of Civil Procedure 12(b)(6). *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citations omitted). We review de novo the dismissal of claims on a 12(b)(6) motion. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Furthermore, we "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "To survive a motion to dismiss, the complaint's factual

9

allegations must be enough to raise a right to relief above the speculative level—that is, the complaint must contain enough facts to state a claim for relief that is plausible on its face." *King*, 825 F.3d at 214 (cleaned up).

This Court reviews motions for summary judgment de novo. *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). Under the federal rules, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if proof of its existence or non-existence would affect the disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Id.* (citation omitted). The Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).

## III.

### A.

First, we affirm the district court's screening-stage dismissal of the access claim. "[P]risoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

10

Thus, prison authorities must "assist inmates in the preparation and filing of meaningful legal papers." *Id.* at 828. For example, states must provide indigent inmates with stamps to mail legal documents. *Id.* at 824–25. To prevail on an access claim, an inmate must demonstrate an actual injury, meaning that his prison's "alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. In a backwards-looking access claim like the one here, a plaintiff seeks recompense for "the loss of an opportunity to seek some particular order of relief."[7] *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). Generally, to prevail on such a claim, a plaintiff must establish (1) that he lost the opportunity to pursue a "'nonfrivolous,' 'arguable'" underlying claim, (2) "the official acts frustrating the litigation;" and (3) that the relief he seeks is "unobtainable in other suits." *Id.* at 415–16.

Murdock argues that the district court erred in dismissing his access claim as insufficiently pled and as barred by *Heck v. Humphrey*, which generally prohibits a plaintiff from bringing claims whose success would "necessarily imply the invalidity of his conviction or sentence[,] . . . unless [he] can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. Defendants respond that Murdock's claim

---

[7] In his complaint, Murdock sought forward-looking relief in the form of "[i]njunctive relief for the entire prison population who needs to send legal mail as certified even though they're indigent." J.A. 13. The district court properly dismissed his claims on behalf of other inmates because inmates may not file lawsuits on behalf of others, which Murdock does not challenge on appeal. *See Hummer v. Dalton*, 657 F.2d 621, 625–26 (4th Cir. 1981) (holding that a *pro se* prisoner may not act "as a knight-errant for all prisoners"). Murdock also characterizes his claim as purely backwards looking on appeal. Consequently, we do not consider any forward-looking claims for relief that Murdock brought below.

11

is *Heck* barred, and that he failed to state a claim.  Assuming without deciding that Murdock's claim is not *Heck* barred, we affirm the district court's dismissal of the access claim for failure to state a claim.[8]

Murdock's access claim fails because he did not identify precisely the underlying claim that he sought to bring.  In his complaint, he vaguely alleges that he sought "to properly file a 'Motion for a Speedy Trial'" in 2014.  J.A. 5.  On appeal, both parties characterize the "motion" at issue as a "speedy-trial demand" or "request," but nothing in the complaint could have indicated the exact nature and purpose of the document to the district court.  *See, e.g.*, Opening Br. 1; Resp. Br. 2.  Thus, the district court had no way to determine whether the underlying speedy-trial claim was nonfrivolous and arguable.  Of course, the district court bore the responsibility to construe Murdock's *pro se* complaint liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citation omitted)).  But it was not required to guess at any unexpressed or incomprehensible claims.  *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) ("[O]ur task is not to discern the unexpressed intent of the plaintiff, but what the words in the complaint mean.").

---

[8] Notably, we hold that Murdock failed to state an access claim for different reasons than the district court.  The court below explained that Murdock did not allege why Defendants' indigent mail policy "forced him to plead guilty and receive a consecutive sentence."  J.A. 23.  However, Murdock did not need to plead such an explanation.  He only needed to allege that Defendants' conduct "hindered his efforts to pursue a legal claim," namely, his efforts to file his speedy-trial request.  *Lewis*, 518 U.S. at 351.

Moreover, even if we liberally construe the document as a speedy-trial demand, we would nevertheless affirm the district court's conclusion that Murdock failed to sufficiently plead his access claim. Murdock's allegations simply did not demonstrate that Defendants' certified- and registered-mail restrictions actually "hindered his efforts to pursue a legal claim" under either of North Carolina's two speedy-trial statutes.[9] *Lewis*, 518 U.S. at 351. Regardless of which statute might have applied to Murdock, neither imposed a certified- or registered-mail requirement on him.

First, section 15-10.2 requires prisoners subject to a detainer to send speedy-trial requests by registered mail, but Murdock did not allege that he was subject to a detainer. Thus, he failed to show that that provision even applied to him.

Second, section 15A-711(c) does not necessitate certified or registered mail. This provision requires that an inmate who has pending charges, but is not subject to a detainer, file his speedy-trial request with the clerk of court where the charges are pending and serve it upon the prosecutor pursuant to North Carolina Rule of Civil Procedure 5(b) within six months. To "file" a document with the clerk, an inmate must "deliver[] the original document to the office where the document is to be filed." § 15A-101.1(7)(a). An inmate

---

[9] Defendants urge that a speedy-trial demand does not constitute a "claim" or a "cause of action" that satisfies *Harbury*'s requirement that a plaintiff demonstrate he possessed a "nonfrivolous" and "arguable" claim. *Harbury*, 536 U.S. at 416. Instead, they characterize these demands as mere requests that prosecutors act within certain timeframes. Once a prosecutor receives such a request, they have full discretion to decide how to proceed. *See Armistead*, 807 S.E.2d at 671 (discussing purpose of speedy trial statute). We need not decide this issue. Even assuming without deciding that these requests constitute "claims" under *Harbury*, Murdock still has not shown that either statute imposed a certified- or registered-mail requirement on him.

completes filing "when the original document is received in the office where the document is to be filed." *Id.* Of course, Murdock would have borne the burden of proving that he filed his request with the clerk. *See Armistead*, 807 S.E.2d at 672. A certified- or registered-mail return receipt could have provided one way to prove delivery, but it was not the only way—he also could have carried his burden by demonstrating that the clerk's office stamped his document as "filed." *See id.* (holding that a file-stamped document proves that a document was filed). Additionally, Murdock would not have needed to use certified or registered mail to serve the request on the prosecutor, as Rule 5(b) also does not impose a certified- or registered-mail requirement. N.C. R. Civ. P. 5(b)(2)(b) (permitting service upon a party by "mailing a copy to the party at the party's last known address"); *see also Isenberg v. N.C. Dep't of Com.*, 772 S.E.2d 97, 100 ("Rule 5(b) . . . places no emphasis on actual delivery and merely requires pleadings and other papers to be mailed to the party's last known address. Instead of proof of actual delivery by return receipt, Rule 5(b1) requires a certificate of service to accompany all pleadings or other papers required to be served."). Section 15A-711(c) therefore does not require requests to come to the clerk via registered or certified mail. Accordingly, we affirm the district court's dismissal of the access claim.[10]

---

[10] Murdock now insists that he presented Defendants with information from the North Carolina Prison Legal Services (NCPLS) demonstrating that this statute requires certified mail. But he never alleged that he received information from NCPLS about a certified-mail requirement. Instead, his complaint vaguely alleges that he "showed every one of the defendants in this claim the mandatory steps" for filing a speedy-trial demand. J.A. 5. It was not until summary judgment that he presented what appears to be evidence regarding the NCPLS communication. As such, the district court did not have the opportunity to consider this information at the screening stage, where its review was

14

B.

The district court also correctly granted Defendants summary judgment on the First Amendment claim.  Convicted prisoners have a First Amendment right to communicate with others outside of prison.  *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 213 (4th Cir. 2017) (citations omitted) (*Heyer I*).  In *Turner v. Safley*, the Supreme Court held that, to violate the First Amendment, a prison policy or regulation must (1) "impinge[] on inmates' constitutional rights" and (2) lack a reasonable relation to "legitimate penological interests."  482 U.S. 78, 89 (1987).

1.

First, relying on out-of-circuit authority, Defendants assert that their mail policies do not impinge on—or even implicate—the First Amendment because Murdock seeks "a *better* way to communicate by mail, not the *ability* to communicate by mail."  Resp. Br. 48, ECF No. 29.  The Defendants contend that where the ability to communicate exists, the First Amendment does not guarantee optimization.  In support of this argument, they cite *Lane v. Williams*, which held that a prison's policy requiring inmates to communicate with each other through the U.S. Postal Service instead of through their prison's internal mail system did not impinge on the First Amendment, as the inmates merely sought "a way

---

limited to the four corners of the complaint.

better than U.S. mail" to correspond, as opposed to the ability to correspond, which already existed. 689 F.3d 879, 884 (7th Cir. 2012).

Defendants' comparison to *Lane* is flawed. In the Fourth Circuit, inmates have a "First Amendment right to communicate *with those outside*" their prison. *Heyer v. U.S. Bureau of Prisons* (*Heyer II*), 984 F.3d 347, 356 (4th Cir. 2021) (emphasis added). *Lane* considered the right of inmates to communicate with each other internally, and it did not reach communication rights with the outside world. 689 F.3d at 884. As such, it is distinguishable from the case at hand. The mail policies here affected Murdock's ability to communicate beyond the prison walls by U.S. mail. Consequently, they impinged on his First Amendment rights.[11]

2.

Nonetheless, the policies were reasonable under *Turner*. The *Turner* court identified four factors to consider when assessing a policy's reasonableness: (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact

---

[11] Murdock contends that Defendants did not raise this argument below and therefore waived their right to make it on appeal. Indeed, Defendants' brief in support of their motion for summary judgment ambiguously argued that Murdock's allegations and evidence "d[id] not support a constitutional claim." J.A. 59. It is unclear whether Defendants were arguing that the policies did not implicate the First Amendment at all, or that the policies were constitutionally reasonable. Either way, their lack-of-impingement argument fails.

16

accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an "absence of ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89–90 (cleaned up).

As for the first *Turner* factor, the policies bore a rational connection to a legitimate penological objective that was not "so remote as to render the policy arbitrary or irrational." *Heyer II*, 984 F.3d at 357 (citing *Turner*, 482 U.S. at 89–90). Such a logical connection, even in "the most general sense," suffices. *Id.* (citation omitted). As Murdock highlights, Defendants averred below that the mail policies aimed to "safeguard Lanesboro's security," but the district court did not reference security concerns in its summary judgment order. J.A. 58. Instead, it reasoned that certified and regular mail drains limited prison resources. J.A. 476. According to Murdock, financial and resource-preservation concerns cannot justify restricting certified or registered mail, and the district court should not have raised these concerns when Defendants failed to do so. Defendants respond that, even if they did not advance this justification below, the connection between certified- and registered-mail limitations and the government's interest in conserving resources "finds support in common sense and the record" because these delivery methods place greater burdens on prison staff and resources than first-class mail. Resp. Br. 55–56, ECF No. 29.

Defendants are correct. At summary judgment, Defendants' evidence demonstrated that Defendants delimited the use of certified and registered mail because it strained prison resources. This evidence included a declaration from Mabry, who explained that he evaluated the time-consuming procedures that the mailroom, inmate trust fund, and U.S.

17

Postal Service staff used to process certified mail. He concluded that "[a]fter careful evaluation and in accordance to [sic] policy . . . I used good judgement and delimited certified mail to legal mail only." J.A. 71. Defendants' evidence also reflects that, in June 2016, Mabry explained to Murdock that "processing of certified mail for greeting cards and personal mail is not feasible. . . . [Certified personal mail] is redundant and unproductive to the mailroom and trust fund staff of the facility, due to the documentation and processing involved." J.A. 136 (responding to one of Murdock's grievances). Further, it is well known that first-class mail costs less and requires less processing than certified and registered mail. *See supra* note 4 (discussing differences between first-class, certified, and registered mail); *see also* J.A. 70 (Mabry declaration) (explaining that certified mail costs $6 to $8 per piece to send, depending on weight). The court could find a valid, rational connection between limitations on certified and registered mail and the preservation of prison resources using common sense and the record. *See Haze v. Harrison*, 961 F.3d 654, 659 (4th Cir. 2020) (holding that a court can derive a reasonable nexus between a policy and particular goal from common sense or evidence); *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991) (noting that saving scarce prison resources constitutes a rational penological interest).

Indeed, indigent inmates had unlimited access to first-class mail for legal documents, and Lanesboro sometimes processed legal mail as "packages" to ensure that the mail had enough postage regardless of its size. J.A. 68–69. But this unlimited access to first-class mail does not invalidate Defendants' rational penological objective for restricting certified and registered mail, as the latter was more expensive and burdensome

18

for staff. And, importantly, Mabry limited certified and registered mail not just to save costs but also to reduce the mailroom staff's workload. Thus, there is no triable issue as to whether a rational connection between the policies and a legitimate penological objective exists.

The second *Turner* factor, whether inmates can exercise the asserted right in alternative ways, also weighs in Defendants' favor. First, indigent inmates could use first-class mail as an alternative to certified or registered mail. If needed, they could request an exception to the policy and send legal mail via registered or certified mail by presenting a court order demonstrating this requirement. Likewise, under the 2016 policy update to the non-indigent mail policy, non-indigent inmates could still pay to send legal mail via certified or registered mail, and they could use first-class mail for personal mail. Murdock disputes whether first-class mail provides a workable alternative to certified or registered mail, as inmates have no way of confirming that their first-class mail has reached its intended recipient. But under *Turner*, courts afford great deference to prison officials in "matters of professional judgment" pertaining to prison administration. *Haze*, 961 F.3d at 658 (citation omitted). Lanesboro offered inmates—indigent and non-indigent alike—alternatives to certified and registered mail. Murdock effectively "suggests ways that the [mail] system could be improved," but that does not create a genuine dispute under *Turner*. *Matherly v. Andrews*, 859 F.3d 264, 282 (4th Cir. 2017).

Likewise, Defendants prevail on the third *Turner* factor—the burden of the asserted right on guards and other inmates. As discussed above, the evidence showed that

19

Lanesboro's limitations on certified and registered mail aimed to alleviate burdens on the inmate welfare fund, as well as mailroom and U.S. Postal Service staff.

The fourth and last *Turner* factor—whether "ready alternatives" to the challenged policy exist—also weighs in Defendants' favor. Under this factor, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 91. Murdock submits that limiting, not prohibiting, use of certified mail offers a ready alternative, and that a complete ban constitutes an "exaggerated response" to financial concerns. Opening Br. 24–25, ECF No. 24 (quoting *Turner*, 482 U.S. at 90).

However, as Defendants correctly respond, neither the indigent nor non-indigent policies categorically banned certified or registered mail. Indigent inmates could still send certified or registered legal mail if they proved that doing so was required. Non-indigent inmates could pay for certified and registered mail for legal documents. Additionally, Murdock presented no evidence establishing that his proposed alternative would come at a *de minimis* cost, as this factor requires. For these reasons, the policies do not contravene the First Amendment as a matter of law, and we affirm the district court's judgment concerning Murdock's challenge to them.[12]

---

[12] The court below also found, in the alternative, that Defendants were entitled to qualified immunity on the First Amendment claim. Because we hold that Defendants did not violate Murdock's First Amendment rights, we need not reach this issue.

IV.

For the foregoing reasons, we affirm the district court's screening dismissal of Murdock's access claim, as well as the district court's grant of summary judgment to Defendants on his First Amendment claim.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us, and argument would not aid the decisional process.

*AFFIRMED*